Argued September 7, reversed October 26, petition for rehearing
denied November 22, 1960

# PRUETT *v.* LININGER ET AL

356 P. 2d 547

*Robert B. Duncan,* Medford, argued the cause for appellants. On the briefs were Duncan, Brophy, Wilson & Duhaime, Medford.

*Hugh B. Collins* and *Bernard P. Kelly,* Medford, argued the cause for respondent. On the brief were Collins and Redden and Kelly and Kelly, Medford.

Before Rossman, Presiding Justice, and Perry, O'Connell, Goodwin, and King, Justices.

GOODWIN, J.

The defendants appeal from a verdict and judgment for Leslie N. Pruett for damages resulting from severe burns inflicted by an electrical trauma in the course of his employment.

Pruett was employed as a construction worker by a partnership engaged in the general contracting business. He was working with concrete in the building of a bridge on a Jackson County road known as Ross Lane. The bridge crossed Jackson Creek parallel to

an electrical transmission line. The wires were about 25 feet above the northern edge of the bridge.

On July 27, 1954, the day of the accident which gave rise to this litigation, there was present at the construction site a mobile crane. The crane was being used to swing a concrete bucket from a point near the bridge where concrete-mixer trucks disgorged their contents to the places on the bridge where Pruett's employers might utilize the cement during the course of construction. This crane was owned and operated by the defendants, all of whom are members of a partnership which was engaged in both the pre-mixed cement business and also in the business of renting heavy equipment.

On the day of the accident, the defendants, as they will be referred to hereafter, were the suppliers of the ready-mix concrete used in the construction of the bridge. While the evidence established that the business of selling concrete and the business of furnishing heavy equipment to other contractors did not always go hand in hand, the defendants were, on July 27, 1954, furnishing both services to Pruett's employers.

The defendants, like the employers of Pruett, had secured coverage for their workmen under the Workmen's Compensation Act. The man who was operating the defendants' crane on the date of the accident was a partner in the defendants' business, but there is no dispute that he was, like the other workmen of both employers, covered by the Compensation Act.

The procedure usually followed by Pruett's employers may be briefly described as follows: The defendants' ready-mix trucks would deliver their contents to the job by means of a chute fastened to the rear of the truck. At the point where the wet concrete

left the chute, it became the duty of the purchaser (Pruett's employers) to place the concrete in the forms. If the forms were close enough to the truck, the operation was comparatively simple. The truck operator merely regulated the flow of the concrete down the chute to accommodate the workmen who spread the concrete and worked it into the forms. If the truck could not approach the forms close enough for direct placement into the forms, Pruett and his fellow workmen ordinarily wheeled the wet concrete away from the truck in wheeled bucket carts, or "buggies", as the witnesses called them.

On or before the day of the accident, it was decided by Pruett's employers to utilize a crane with a bucket suspended from a boom to receive the contents of the ready-mix trucks. The crane would then swing the wet concrete out over the bridge to the point where it was desired that it be placed in the forms. The use of the crane eliminated the necessity of workmen wheeling the buggies over the surface of the bridge and also speeded the work. Since the bridge contractors did not own a crane, they hired, at an hourly rate, the use of the defendants' crane.

The financial arrangements between Pruett's employers and the defendants were not formalized in writing. The evidence showed that the defendants charged Pruett's employers the prevailing price for concrete delivered to the job, and then charged an additional sum for the hourly use of the crane with an operator. The crane operator was selectd by the defendants, paid by them, and was under the supervision of the defendants in the manner in which he operated and maintained the equipment. The operator was, however, under the supervision of the bridge contractors in that they could and did give him in-

structions with reference to when and where the concrete bucket was to be emptied. The testimony revealed that these instructions, as is customary in work of that kind, were for the most part unspoken, and were given by signals and gestures from the workmen on the bridge. Pruett was one of the workmen who gave signals to the crane operator.

While the work described above was in progress, Pruett either pushed the crane bucket, or had a hand on it, when the boom from which the bucket was suspended swung into the proximity of the power line above the bridge. There was a conflict in the testimony whether Pruett pushed the cement-filled bucket or whether the crane operator caused the cable to approach the power line. In any event, the cable suspending the crane bucket either touched the power line or came so close to the wire that a charge of 7,200 volts of electricity was caused to pass through Pruett's body. The evidence on the question of negligence was resolved by the jury in favor of Pruett.

There are numerous assignments of error, but the key question is whether the trial court erred in ruling upon two affirmative defenses, which, under the facts stated above, presented questions of law for the court.

■ The defendants had pleaded two theories which would bring the case within the exclusive coverage of the Workmen's Compensation Act: (a) joint supervision and control under ORS 656.154; and, in the alternative, (b) that the crane operator was in the same employ as Pruett on the theory that the crane operator was a loaned employe. Each theory was sufficient, if established, to bar the action and to limit Pruett's remedy to his benefits under the Workmen's Compensation Act.

■ The pleading of alternative defenses, as of alter-

native statements of the same cause of action, is permissible so long as each is separately stated. *Cook v. Kinzua Pine Mills Co. et al*, 207 Or 34, 293 P2d 717; *Susznik v. Alger Logging Co.*, 76 Or 189, 147 P 922, Ann Cas '17C700; Clark, Handbook of the Law of Code Pleading (2d ed, 1947) 629, § 99; 1 Bancroft, Code Pleading (1926) 401-414, §§ 248-256. Our code provides that the defendant may plead any new matter constituting a defense, ORS 16.290 (b); separate defenses must be pleaded separately, ORS 16.090; and pleadings must be liberally construed, ORS 16.120. It is within the trial court's discretion whether to allow a motion to require an election. *Cook v. Kinzua Pine Mills Co. et al*, supra at 59.

■ It is the rule in Oregon that inconsistent defenses may not be pleaded when they are so contradictory that if one is true then the other must be false in fact. *Susznik v. Alger Logging Co.*, supra. Such a pleading may be stricken as sham under ORS 16.100. The strict effect of this rule, however, is limited to those pleadings in which the falsity of one alternative requires no exposition, as where an answer alleges that a writing was not executed and then alleges that it was executed for a particular purpose. *Johnson v. Sheridan Lumber Co.*, 51 Or 35, 93 P 470. Where the apparent inconsistency is in the application of a rule of law to the facts pleaded in the alternative, the pleading is not inconsistent. 71 CJS 114, Pleading § 42. Clark, op. cit., supra at 631.

If the crane operator was under the control of Pruett's employers, even though not on their payroll, he would have been a loaned employe. If such a relationship were established, the defendants claimed, the loaned-employe theory would have made the crane operator and the injured workman both servants of

the same master and therefore the sole remedy for Pruett's injuries would have been the benefits scheduled under the act. ORS 656.154.

This court has recognized that a loaned employe can be the fellow servant of the workmen of the borrowing employer under certain factual conditions. In *Galer v. Weyerhaeuser Timber Co. et al,* 218 Or 152, 175, 344 P2d 544, we held that conflicting evidence concerning the relationship made the question one for the jury.

In the case at bar, unlike in the *Galer case,* supra, the evidence was not specifically directed to the question of a loaned-employe relationship. The jury trial was commenced directly, without a preliminary ruling upon the relationship of the parties, and the plaintiff proceeded at all times on the theory that the crane operator was the employe of the defendants. The defendants were not permitted to try the issue to the court in advance of trial as is the more orderly procedure. ORS 656.324 (3) ; *Claussen v. Ireland,* 216 Or 289, 338 P2d 676. By the time the plaintiff had completed his case, and the defendants attempted to renew the question of the applicability of ORS 656.154 on a motion for a judgment of non-suit, the evidence may have been subject to more than one interpretation on the theory of a loaned employe. It is unnecessary, however, to decide whether the loaned-servant theory should have been submitted to the jury. Other facts which were established beyond dispute in the plaintiff's case limited the rights of the injured workman to his benefits under the Workmen's Compensation Act.

Assuming on the plaintiff's behalf that the crane operator remained at all material times in the employ of the defendants, then the plaintiff is barred by the

other affirmative defense. Both employers were under the coverage of the act. The plaintiff's own evidence proved conclusively that there was joint supervision and control of the premises as that term is defined in ORS 656.154 (2). The plaintiff is limited by the terms of the Compensation Act to his remedy thereunder.

ORS 656.154 provided in 1954:

"(1) If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman, or if death results from the injury, his widow, children or other dependents, as the case may be, may elect to seek a remedy against such third person. However, no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the employer of the injured workman and was an employer subject to ORS 656.002 to 656.590.

"(2) As used in this section, 'premises' means the place where the employer, or his workman causing the injury, and the employer of the injured workman, are engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation."

The plaintiff, in an effort to bring himself within the Employers' Liability Law (ORS 654.305 to 654.335) for the purpose of imposing liability upon the defendants, brought himself fully within the bar of ORS 656.154 quoted above. The evidence established conclusively that the workmen of both employers were co-mingled in a common undertaking, all were exposed to the same hazards, and all were necessary to the completion of the work at hand.

When this case was tried, the trial court was of

the opinion that the facts involved the mere delivery of merchandise, and thus took the view that the applicable rule was to be found in *Johnson v. Timber Structures, Inc.,* 203 Or 670, 281 P2d 723. At the time of the trial, this court had not yet decided a number of recent cases which distinguished the delivery of merchandise from factual situations similar to the case at bar. In *Nelson et al v. Bartley et al,* 70 Adv Sh 1529, 352 P2d 1083, we held that the exclusive coverage of the Workmen's Compensation Act applies when there is an operational co-mingling of the workmen of two or more covered employers even though only one of the covered employers may be said to be in actual control of the site where the work is under way.

The facts presently before the court are very like those in *Fisher v. Rudie Wilhelm Whse. Co.,* 224 Or 26, 355 P2d 242. In the *Fisher case,* it was structural steel that was being unloaded by crane instead of wet cement. The instrumentality of the injury was the crane dropping steel on a workman's foot, rather than the crane transmitting electricity to the workman's body. In most other particulars the facts are indistinguishable. We held that the benefits under the Compensation Act were the exclusive remedy.

When a workman employed by a covered employer under the Workmen's Compensation Act receives injuries in the course of his employment through an instrumentality under the control of a third party there are a number of possibilities open to him.

In every case, whether or not there is negligence on the part of any person, the workman may accept the benefits of the Workmen's Compensation Act under his own covered employment.

If the third party causing the injuries was neg-

ligent, a third-party action will lie unless barred by ORS 656.154. If the defendant in such an action has rejected the coverage of the Compensation Act, ORS 656.324 (4) operates to deprive the defendant of the common-law defenses of assumption of the risk, contributory negligence, and injury by a fellow servant. In certain cases, the standards of care demanded by a completely separate statute, the Employers' Liability Law, may also be imposed upon the defendant. The maximum benefit for an injured workman is available under a combination of Workmen's Compensation furnished by his own employer, and an action against a negligent defendant who has rejected the Compensation Act and whose workmen are engaged jointly in the operation with the plaintiff's fellow workmen. For an excellent review of the many Oregon decisions on the Employers' Liability Law since its enactment in 1909, see the first volume of the Willamette Law Journal (1959), which is devoted in its entirety to the subject.

■ If the third party causing the injuries was negligent, but was also covered by the Workmen's Compensation Act, which is the situation now before the court, a third-party action authorized by ORS 656.154 is nevertheless available *unless the two employers were engaged in the performance of component parts of an undertaking on premises occupied by the workmen of both covered employers.* Fisher v. Rudie Wilhelm Whse. Co., supra.

■ Within this framework of existing remedies and limitations upon them, Pruett sought to bring himself within the scope of the Employers' Liability Law, ORS 654.305 to 654.335, in order to impose upon the defendants the highest standards of care demanded by that statute and to deprive the defendants of the

common-law defenses mentioned above. He proved that the defendants were the owners and operators of the crane and that the work involved hazard to himself as well as to the defendants' workmen. He also proved that the workmen of both employers were jointly engaged in a common activity. In producing the evidence necessary to impose upon the defendants the standards of care exacted by the Employers' Liability Law, Pruett incidentally disclosed the facts which brought him under the exclusionary provisions of the Workmen's Compensation Act. This situation can occur only when both employers are covered under the Workmen's Compensation Act, and when the facts disclose a common enterprise. The result, while disappointing to the plaintiff, follows from that part of the Workmen's Compensation Act (ORS 656.154) which limits the rights of such workman to his benefits under that act. Other sections of the same act relieve him of any duty to prove negligence, and further permit him to recover the scheduled benefits even if his own negligence is the sole cause of his injury.

While this court follows the rule that the Workmen's Compensation Act was enacted for the benefit of injured workmen and should be liberally construed in their behalf, *Johnson v. Timber Structures, Inc.,* supra, it is also bound by the express terms of that act. It is the legislative policy of this state to encourage employers to accept the coverage of the Compensation Act by making that act the exclusive remedy for industrial accidents suffered by workmen of the covered employer as well as by the workmen of other covered employers engaged in the furtherance of a common operation, where the workmen of both employers are jointly involved in the work out of which the accident arises. *Plummer v. Donald M. Drake Co.,*

212 Or 430, 438, 320 P2d 245. See discussion of rule in other states in 2 Larson, Workmen's Compensation Law 170-186, §§ 72.10 et seq.

By reserving its judgment upon the issue of the exclusive coverage of the Workmen's Compensation Act until after the verdict, the trial court permitted a great deal of trial time to be taken up with evidence relevant only to the issue of coverage. Whether this mass of evidence was confusing to the jury will never be known. The difficulty should have been avoided by the trial court first determining the matter of coverage. In such cases, it is the clear intent of ORS 656.324 (3) that the trial court resolve the questions presented by supplemental answer before the commencement of the jury trial, if any, upon the issues of negligence and damages.

The trial court having erred in submitting the case to the jury, it is unnecessary to consider the numerous assignments of error with reference to the taking of testimony and the instructions given or refused.

Reversed.