Henry L. HESS, Jr., Administrator of the
Estate of George William Graham,
Deceased, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15685.

United States Court of Appeals
Ninth Circuit.

Aug. 24, 1960.

Rehearing Denied Oct. 31, 1960.

Hess & Hess, Clayton Hess, Cleveland C. Cory, Portland, Or., Geoffrey C. Hazard, Jr., Berkeley, Cal., for appellant.

George Cochran Doub, Asst. Atty. Gen., C. E. Luckey, U. S. Atty., Portland, Or., Samuel D. Slade, Alan S. Rosenthal, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before BARNES, HAMLEY and HAMLIN, Circuit Judges.

HAMLEY, Circuit Judge.

George W. Graham was drowned when a tug on which he was employed sank in a spillway bay of Bonneville Dam on the Columbia River in Oregon. His administrator brought this suit for damages against the United States under the Tort Claims Act, 28 U.S.C.A. § 1346(b), 2674.

The theory of the action was that the government is liable under the Employers' Liability Law of Oregon or, if not, then under the Wrongful Death Act. The district court entered judgment for the government. The court held that the Liability Law is not applicable because (1) that law could not be constitutionally applied under the facts of this case, and (2) if it could be applied the United States is not liable thereunder because it was not responsible for the work being performed by decedent. The court held that the government is not liable under the Oregon Wrongful Death Act because negligence had not been proved.

On appeal we affirmed. Hess v. United States, 9 Cir., 259 F.2d 285. With regard to the Liability Law we agreed with the district court that this law could not be constitutionally applied under the established facts. In view of that conclusion we did not reach the question of whether the district court erred in holding that act inapplicable for the further reason that the United States was not responsible for the work being performed by decedent. Concerning the Oregon Wrongful Death Act we concluded that the district court did not err in determining that negligence had not been proved.

On appeal to the Supreme Court appellant did not question the ruling of the district court and this court that there is no liability under the Oregon Wrongful Death Act. His sole claim in that court was that he was erroneously deprived of the opportunity to invoke the Liability Law. The Supreme Court held that there is no constitutional impediment to the invoking of the Liability Law under the facts of this case. It was therefore held to be error to deny relief on that ground. Noting that this court had not reached the second question concerning the Liability Law, the judgment was set aside and the case was remanded to this court for a consideration of that question. Hess v. United States, 361 U. S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305.

In this opinion we deal with the question which has been referred to us by the Supreme Court.[1]

The tug on which Graham was working at the time of the accident was owned and operated by Larson Construction Company, an independent contractor. Larson had entered into a contract with the United States to repair the underwater baffles on the baffle deck extending downstream across the width of Bonneville Dam. In performance of this contract Larson made use of the tug on which Graham was employed to conduct sounding operations along the downstream face of the dam. The tug was swamped by the turbulent water, and in its sinking Graham lost his life.[2]

The district court held that, assuming that the Liability Law could be constitutionally applied, there could be no recovery here because "the Government was not responsible for the work there being performed."

In using the quoted words the district court was placing a construction upon ORS 654.305, quoted in the margin.[3] ORS 654.305 gives a cause of action to

1. Following the Supreme Court opinion, supplemental briefs were filed and we have heard additional oral argument.

2. A more complete statement of the facts is set out in our first opinion.

3. ORS 654.305:
"Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employes or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliances and devices."

recover damages for the injury or death of "employes or the public" as a result of the performance of "work involving a risk or danger" to such person. Any person "having charge of, or responsible for" such work may be held liable under the statute.

The United States was not in charge of or responsible for the operation of the tug. It follows that if Graham's death resulted solely from the operation of the tug the district court correctly held that the government, not being responsible for such work, is not liable under the statute.

Appellant, however, contends that Graham's death did not result solely from the operation of the tug. He contends that the way in which the spillway gates of Bonneville Dam were positioned was one of the causes of the accident and that the United States had charge of or was responsible for the positioning of those gates.

It is our opinion that under the established facts the positioning of the spillway gates must be regarded as one of the causes of the accident. The district court found that the "immediate cause of the accident and the deaths of the men was the turbulent condition of the water, which made it impossible to control the movement of the tug Muleduzer and barge and caused the barge to strike the pier."

The turbulent condition of the water resulted from the rush of the river through the outlets provided by the spillways. These spillways were controlled by gates which made it possible to regulate the flow of water, and hence its turbulence. Had more of the gates been closed while the sounding operations were in progress, it is unlikely that the tug would have foundered.[4]

It remains to be determined, however, whether the United States had charge of or was responsible for the positioning of the spillway gates at the time in

question. The United States had ownership, possession and physical control of the dam, and the spillway gates were operated exclusively by its personnel. Under the contract between the government and Larson, however, it was agreed that Larson would designate which gates the contractor desired to have closed. Had such requests for closure of gates not been complied with, Larson could have declined to proceed with the work. Hess v. United States, 9 Cir., 259 F.2d 285, 293, footnote 10. All gates which Larson requested be closed were closed at the time the sounding operations were in progress.

■ Had the United States surrendered physical control of Bonneville Dam to Larson, subject to no more than the right to inspect, the government could not be held responsible for the operation of the spillway gates. Warner v. Synnes, 114 Or. 451, 230 P. 362, 235 P. 305, 44 A.L.R. 904. In our view, however, an owner who remains in possession and through its own employees continues active work thereon must accept responsibility for the risks and dangers associated with such work, despite any contractual arrangement it may have to perform that work in a manner requested by others. It may no more delegate its responsibility in this regard than may an employer. See Warner v. Synnes, supra, 235 P. 305, 308.

■ It follows from what is said above that the district court erred in holding the government not liable because it "was not responsible for the work there being performed."

But appellant must top other hurdles before he is entitled to a ruling that the United States is here chargeable with the statutory care prescribed by ORS 654.305. It must be shown that there was a commingling of function or duty of Graham and the employees of the government. Byers v. Hardy, 216 Or. 42, 337 P.2d 806, 809. It must also be

---

4. We are not concerned at this point with whether the failure to close more gates constituted a breach of the statutory duty imposed by ORS 654.305.

established that the spillway gates were being actively operated in a way directly affecting Graham. Byers v. Hardy, supra; Warner v. Synnes, supra.

There was here a commingling of function or duty between Graham and the employees of the government. A contractual relationship existed between their respective employers, and the positioning of the spillway gates by the government's employees had a direct effect upon the performance of Graham's duties. A shoulder-to-shoulder commingling is not required. See Walters v. Dock Commission of City of Portland, 126 Or. 487, 245 P. 1117, 266 P. 634, 270 P. 778.

In our opinion it is also established that the spillway gates were being actively operated in a way directly affecting Graham. It is true that they were at rest at the time of the accident and that their stabilized position rather than their movement contributed to the accident. But the concept of active operation does not require that wheels be grinding away incessantly. It is sufficient if there is immediate mechanical control adequate to avoid the risk or danger.

Government personnel had immediate supervision and control of the gates and could have repositioned them on short notice, or if this was not practicable the government could have required a delay in the sounding operations. This case is not comparable to those in which the accident was caused by a defective rope (Warner v. Synnes) or uninsulated electric wires (Myers v. Staub, 201 Or. 663, 272 P.2d 203). In circumstances of the latter kind the owner has not retained immediate capability of avoiding the risk or danger.

We therefore conclude that under the established facts ORS 654.305 is applicable with respect to operation of the spillway gates by the United States. Having arrived at a contrary conclusion, the district court did not reach the questions of whether the government fulfilled the statutory duty of care prescribed by that section and if not what monetary damages are recoverable. We cannot deal with these questions on the present record.

The case is remanded to the district court for further proceedings consistent with this opinion.