Argued February 2, affirmed April 12, 1967

PENROSE, *Respondent, v.* MITCHELL BROS.
CRANE DIVISION, INC., *Appellant.*

426 P. 2d 861

*Frank E. Day,* Portland, argued the cause for appellant. With him on the brief were George M. Joseph, James G. Breathouwer, and Reiter, Day, Anderson & Wall, Portland.

*Richard T. Kropp,* Albany, argued the cause for respondent. With him on the brief were Willis, Kyle, Emmons & Kropp, Albany.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and FORT, Justices.

FORT, J. (Pro Tempore).

At the time of his injury plaintiff was employed by the Howard Brewton Company as a laborer. His employer was engaged as a general contractor in the construction of a building. The work, so far as here pertinent, involved the erection of precast concrete wall panels weighing approximately 25 tons each. In order to erect these wall panels, plaintiff's employer, Brewton, rented a self-operating mobile crane from the defendant. Such a unit is a costly and complicated piece of machinery. The defendant furnished two of its own employees, both experienced specialists, with the crane. Each was obtained by the defendant through the appropriate union hiring hall for the Brewton job. One was known as a crane operator; the other as an oiler. The latter person, in addition to other duties about the machine, drove the mobile crane in accordance with the directions received by him from the crane operator. The crane operator had sole control over all activity of the crane itself. He was also in general charge of the whole mobile crane unit. The Brewton Company furnished a signalman to communicate with the crew of the mobile unit.

The normal procedure was for the crane to pick up a wall panel by hooking on to it. Outriggers on the mobile crane were then extended from it by hand and set into position on the ground. Its screw jacks were

adjusted as needed to balance the crane. The oiler was directly responsible for their placement and movement. The panel was then lifted by the crane into an upright position clear of the ground. The outriggers, still under the direct control of the oiler, were then raised from the ground and returned by hand to their normal position. The mobile crane was next driven by the oiler the short distance necessary to place the panel in its proper position. It was held in position by the crane until it had been seated and then braced by a steel rod or rods extending past the mobile crane from the upper part of the panel downward and away from the panel and thence affixed to the ground.

A mobile scaffold-like staging was then moved by Brewton into the space between the crane and the panel. A laborer on the staging released the rigging from the panel thus freeing the crane. The oiler then drove the crane forward away from the panel thus ending that phase of the operation. In this case the plaintiff was the laborer on the staging. He released the rigging from the panel and the crane moved forward away from the wall. As it was doing so the panel fell outward against both the crane and the staging upon which plaintiff was working. Plaintiff was injured as a result.

The normal procedures had been employed, except as hereafter mentioned. Generally two braces were used to hold each panel in place. On this occasion only one was used. No one actually saw what caused the panel to fall. There was substantial evidence, however, from which the jury could have found that an outrigger extending from the crane on the side away from where the crane operator sat, had not been returned to its proper position after the panel was seated and braced. As a result it had hooked and badly bent the

single brace supporting the panel as the crane drove away, thus causing the panel to fall. The oiler, one of defendant's employees, was the person who was responsible for the movement of the crane rig including control over the outriggers. One of his duties was the placement of the outriggers. The crane operator, defendant's employee in general charge of the rig, testified the left outrigger after the accident was in a position where it could have contacted the brace, and that no one had signalled him the outrigger had been taken in before the rig was driven away from the wall panel.

A Brewton employee served as signalman directing the crane operator when the crane might be moved away from the panel following the release of the rigging. The evidence was conflicting as to who, if anyone, gave the signal to the crane operator that it was all right for the rig to move away from the panel on this occasion. The crane operator here signalled the oiler to drive the rig away from the panel. Neither the crane operator nor the oiler from their operating seats could see whether the outriggers on the side away from them had been returned to their proper position. Neither checked to see.

Action was brought by plaintiff against the defendant charging violation of the Employers' Liability Act and common law negligence. The jury returned a verdict in his favor. Defendant at the close of the case moved for a directed verdict. It was denied. Failure to grant it is assigned as error. We think the ruling was correct.

The defendant in its brief asserts "The fundamental question is the application of *Thomas v. Foglio,* 225 Or 540, 358 P2d 1066 (1961), under the facts of this case." In this connection it contends the defendant

here was not one "having charge of, or responsible for any work"; that the defendant did not "participate in the enterprise in some way" which "must be more than a common interest in an economic benefit which might accrue from the accomplishment of the task"; and that there was not here "an intermingling of duties and responsibility" of plaintiff's employer and the defendant.

We think the evidence here, as in *Pruett v. Lininger,* 224 Or 614 at 622, 356 P2d 547 (1960), clearly established "* * * that the workmen of both employers were commingled in a common undertaking, all were exposed to the same hazards, and all were necessary to the work at hand."

■ Defendant further contends that it merely supplied equipment "to be used in the course of plaintiff's employment." Here, however, the defendant's employees, who were on its payroll, were solely responsible for and did operate the mobile crane. *Pruett v. Lininger,* supra. The mobile crane was therefore clearly under the control of the defendant. The defendant was more than the supplier of the equipment. It was the operator.

Finally, defendant contends that its two employees, the crane operator and the oiler who operated the mobile crane, were loaned servants and that therefore at the time of the accident they were "employees" of Brewton within the meaning of the Employers' Liability Act. As such, it is urged that the defendant is not liable for their acts while they were working under the supervision and control of Howard Brewton Company, the plantiff's employer. It therefore becomes necessary to consider the loaned servant doctrine.

The loaned servant doctrine[1] has its origin in the rule, now adopted in Restatement 2d, 500, Agency § 227:[2]

"A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not as to others.

"Comment:

"a. * * * Starting with a relation of servant to one, he can become the servant of another only if there are the same elements in his relation to the other as would constitute him a servant of the other were he not originally the servant of the first. * * *

"b. * * * In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted a division of control, he has surrendered it.

"c. * * * a continuation of the general employment is indicated by the fact that the general employer can properly substitute another servant at any time, that the time of the new employment is short, and that the lent servant has the skill of a specialist.

"A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. * * * *"

The Supreme Court of Pennsylvania in *Mature v. Angelo, Appellant,* 373 Pa 593, 97 A2d 59 (1953), care-

---

[1] Warner v. Synnes, 114 Or 451, 230 P 362, 235 P 305, 44 ALR 904 (1925).

[2] Hopfer v. Staudt, 207 Or 487, 298 P2d 186 (1956). See also 17 ALR2d 1388 at 1393.

fully considered the problem of the "borrowed" or loaned employee in a case involving liability of the owner of a heavy front end dirt loader furnished by him with driver for work on a construction project for injury to a construction company employee. The Court there stated:

\* \* \* \* \*

"The crucial test in determining whether a servant furnished by one person to another becomes the employe of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done *but also to the manner of performing it.* (Citations omitted.)

"A servant is the employe of the person who has the *right* of controlling the manner of his performance of the work, irrespective of whether he *actually* exercises that control or not. (Citations omitted.)

"Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, and, unless that presumption is overcome by evidence that the borrowing employer *in fact* assumes control of the employe's *manner of performing the work,* the servant remains in the service of his original employer. (Citations omitted.)

"Facts which indicate that the servant remains the employe of his original master are, among others, that the latter has the right to select the employe to be loaned and to discharge him at any time and send another in his place, that the lent servant has the skill of a technician or specialist which the performance of the work requires, that the hiring is at a rate by the day or hour, and that the employment is for no definite period. (Citations omitted.)

"The mere fact that the person to whom a machine and its operator are supplied points out to the operator from time to time the work to be done and the place where it is to be performed does not in any way militate against the continuance of the relation of employe and employer between the operator and his original master." (Citations omitted.) (Emphasis theirs.) *Mature v. Angelo,* supra, at 595, 596 and 597.

Under the foregoing tests it is clear here that neither the crane operator nor the oiler were loaned employees.

We have stated concerning this rule in *Pruett v. Lininger,* supra, at 622:
"* * * In *Galer v. Weyerhaeuser Timber Co. et al,* 218 Or 152, 175, 344 P2d 544, we held that conflicting evidence concerning the relationship made the question one for the jury."

In *Mature v. Angelo, Appellant,* supra, the court correctly, we think, stated at page 598:
"Where the facts are not in dispute, and the evidence leaves no sufficient ground for inconsistent inferences therefrom, the question as to who is the servant's employer is a matter for the determination of the court, but, where the evidence presents an issue of fact, or different inferences can reasonably be drawn therefrom, the question is one for determination by the jury." (Citations omitted.)

In the case at bar, there was no such conflict in the evidence surrounding the employment or the duties of the crane operator or the oiler either generally or at the time and place of the accident to warrant submission to the jury of the question whether or not they were loaned employees. The jury could not have correctly found otherwise. The court correctly determined that they were not. It follows then that the first assignment of error is without merit.

Appellant's second assignment of error related to the failure of the trial court to instruct the jury on its own motion to disregard testimony which, also on its motion, it had just ordered stricken.

Reliance is placed by defendant on *Hepler v. Santerno,* 244 Or 246, 417 P2d 390 (1966). The testimony in question in that case was irrelevant to any issue properly before the court. It was offered after the court had informed counsel of the risk of a mistrial if the evidence was not shown to be proper. It was part of a continuing effort to get before the jury evidence challenging the adequacy of consideration in a case where there was no such issue before the court. The issue in that case related only to the performance of a contract. Thus evidence attempting to show that the contract price was too high, when there was no justiciable issue regarding it, was highly prejudicial.

In the case at bar, on the other hand, the proffered testimony was both relevant and material. The witness had been qualified by the court as an expert to enable him to express an opinion concerning the propriety of the practice upon occasion of bracing a 25-ton concrete wall panel in an upright position with a single rather than two braces, and had earlier been permitted to express his opinion thereon. At the conclusion of his cross examination the following took place:

"Q So, as a matter of fact, you don't know, and in this particular case, in this particular instance, the way that was finally set in that wall, whether one brace would be sufficient to hold it or not, do you?

"A No, sir.

"THE COURT: I will have to strike his prior testimony.

"COUNSEL: Thank you, your Honor. That's all I have. Thank you, Mr. Kadlec."

\* \* \* \* \*

■ It will be noted that here counsel after thanking the court for its unsolicited ruling, terminated his examination of the witness. By thanking the court for the ruling, thanking the witness and terminating his examination, every appearance of satisfaction with the state of the record was given by defendant. Not only was no request addressed to the court to strike the witness's testimony, but no request to instruct the jury to disregard it was made.

Furthermore, though the reason for the ruling was not stated, it would appear from an examination of the record that the evidence was stricken not because the court determined that its previous ruling that the witness was an expert had been erroneous, but simply because in respect to this particular panel, the witness lacked sufficient information to form an opinion as to whether or not it was proper to have braced it with a single brace. The appellant did not contend that it had been prejudiced by the evidence. The record reveals none. This assignment is without merit.

The remaining three assignments of error relate to two requested instructions not given and to one of the instructions given by the court. We have already discussed and determined the issues underlying the propriety in this case of each of the three instructions. The jury was fully and correctly instructed concerning the matters in question. It follows therefrom that none of these three assignments of error has merit.

The judgment is affirmed.