Argued April 7, reversed in part; affirmed in part April 26, 1967

HALL ET AL, *Appellants, v.* CORNING ET AL,
*Respondents.*
427 P. 2d ·105

*William B. Wyllie,* Salem, argued the cause for appellants. With him on the briefs were Rhoten, Rhoten & Speerstra, Salem.

*Eugene K. Richardson,* Newport, argued the cause and filed a brief for respondents.

Before McALLISTER, Presiding Justice, and DENECKE and REDDING, Justices.

DENECKE, J.

The plaintiff landowners received a jury verdict in their action for trespass. The trial court granted defendants' motion for a new trial. Plaintiffs appeal.

The issue is whether the defendants are vicariously liable for the acts of a bulldozer operator.

■■  The motion for a new trial was based upon the ground that there was insufficient evidence to send the case to the jury.[1] For this reason the evidence will be considered in its form most favorable to plaintiffs.

■  When a motion for a new trial is granted upon the ground that there is no evidence upon which to submit the case to the jury, the trial court is not given the benefit of any discretion. The sole issue is whether there is any evidence to substantiate the verdict; if there is, the order granting a new trial is erroneous. *Williams v. Clemen's Forest Prod., Inc.,* 188 Or 572, 604, 216 P2d 241, 217 P2d 252 (1950).

The plaintiffs own a parcel of beach property. All the defendants except Sell are a partnership known as Bayshore, engaged in laying out a subdivision on property adjoining that of plaintiffs. The defendant Sell acted as the managing agent for Bayshore. Sell was paid by McMillan, a defendant partner, who also owned McMillan Company, civil engineers and land surveyors, who did the lay-out work on the project for Bayshore. McMillan hired Dunn, a bulldozer owner and operator. Dunn worked for Bayshore and was paid by Bayshore for his work and equipment on an hourly basis.

McMillan Company hired and paid surveyors to survey the boundaries of Bayshore's property. In the process of making the survey, the surveyors searched for "bearing" or "witness" trees which they believed might be buried under the sand. They asked Sell if they could use the services of Dunn and his bulldozer

---

[1] The motion was granted after 30 days, the time within which a trial court can grant a new trial sua sponte, therefore, the order could only be made upon the ground specified in the motion. Lundquist v. Irvine, 243 Or 274, 413 P2d 416 (1966).

to uncover the trees and Sell assented knowing the work Dunn was to do. Dunn was paid for this work by Bayshore. In the search Dunn, at the surveyors' request, dug three holes in plaintiffs' property, the cause of this lawsuit.

■ We conclude that there is some evidence that Bayshore is responsible for the damage done by the bulldozer and, therefore, the trial court's order granting a new trial was erroneous.

Dunn was in the general employment of Bayshore. Bayshore's contention is that the surveyors are independent contractors and they supervised Dunn's activities in digging in the search for the trees, and, therefore, the surveyors are responsible. Bayshore's argument, although not stated by them in such terms, in essence is that Dunn became a "loaned servant" or "adoptive employee" of the surveyors and, therefore, the surveyors, and not Bayshore, are liable for his activity.

■ In *Penrose v. Mitchell Bros. Crane Division, Inc.*, 246 Or 507, 426 P2d 861 (1967), we discussed the "loaned servant" doctrine. Some of the authorities there quoted are particularly applicable to the facts in this case. Comment c. to § 227, 1 Restatement (Second), Agency, 501, states:

"* * * Thus a continuation of the general employment is indicated by the fact that the general employer can properly substitute another servant at any time, that the time of the new employment is short, and that the lent servant has the skill of a specialist.

"A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. * * *"

We quoted with approval from *Mature v. Angelo,* 373 Pa 593, 597, 97 A2d 59 (1953), as follows:

> "The mere fact that the person to whom a machine and its operator are supplied points out to the operator from time to time the work to be done and the place where it is to be performed does not in any way militate against the continuance of the relation of employe and employer between the operator and his original master:   *   *   *."

In *Penrose v. Mitchell,* supra, we held, as a matter of law, that the crane operator was not an adoptive employee, but the general employer remained responsible. In this case we hold that there was evidence that Dunn was not an adoptive employee of the surveyors but remained in the employment of Bayshore. Because of such holding it is not necessary to decide whether the surveyors were independent contractors.

The jury was not specifically instructed upon the loaned servant or adoptive employee issue. However, it was instructed generally upon the subject of the defendants' liability for the acts of others performing work.

■ The defendant Sell, however, cannot be held vicariously liable for Dunn's act.

> "*   *   *   Dr. Albert Mount, the superior servant of the other defendants, cannot be held liable for the acts of an inferior servant, even though he had authority from the common master to supervise and direct the act of Miss Lynch, unless he actually participated in the wrongful act complained of.   *   *   *" *Wemett v. Mount,* 134 Or 305, 317, 292 P 93 (1930).

Sell did not actively participate in the digging.

Reversed as to all defendants except Sell; affirmed as to Sell.