**Dorothy Leona TALLMON, Individually and as Administratrix of the Estate of Kenneth Le Verne Tallmon, Deceased, and Kenneth W. Tallmon, Plaintiffs,**

**v.**

**TOKO KAIUM K.K. KOBE, a corporation, Defendant.**

**Civ. No. 65–598.**

United States District Court
D. Oregon.

Aug. 21, 1967.

Frank Pozzi, Pozzi, Levin & Wilson, Portland, Or., for plaintiffs.

Kenneth E. Roberts, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for defendant.

## OPINION

KILKENNY, District Judge:

Actions by Dorothy Leona Tallmon, individually and as Administratrix of the estate of Kenneth Le Verne Tallmon, deceased, and Kenneth W. Tallmon for damages for wrongful death brought under the provisions of the Oregon Employers' Liability Law and the general maritime law. Decedent was employed as a longshoreman aboard defendant's vessel, the MEITOKU MARU, while the vessel was berthed at Portland. The decedent and other longshoremen aboard the vessel were employees of a master stevedore company, Scrap Loaders, Inc., and were engaged in loading a cargo of scrap metal aboard the vessel. While decedent was operating a bulldozer owned by his employer in a hold of the ship, his head was caught between the overhanging and the machine he was operating, as a result of which he died. One of the provisions of the charter under which the MEITOKU MARU was being operated provided that:

"The stevedores, although appointed by Charterers, Shippers, Receivers, or their agents, to be under the direction and control of a Master."

(1) IS THE OREGON EMPLOYERS' LIABILITY LAW APPLICABLE?

The Oregon Employers' Liability Law has no specific provision for a "third party action" where the plaintiff employee, as here, attempts to recover against one other than his immediate employer. The Oregon Court has, however, allowed recovery in such cases where it has been shown that the defendant had a certain degree of control over the work out of which the injury arose. The statutory basis for these decisions is the "and generally" clause of the Oregon Employers' Liability Law, ORS 654.305, which reads:

"Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employes or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

The statutory test is met if the defendant exercised "primary control of the physical instrumentalities immediately in use and which are the media of the injuries or death giving rise to a claim of damage", Myers v. Staub, 201 Or. 663, 272 P.2d 203 (1954); if the defendant "participated" in the enterprise, Thomas v. Foglio, 225 Or. 540, 358 P.2d 1066 (1961); if there was an "operational commingling" of the employees of the two employers, Pruett v. Lininger, 224 Or. 614, 356 P.2d 547 (1960); if there is an active and direct participation on the part of the employer, Byers v. Hardy, 216 Or. 42, 337 P.2d 806 (1959). In *Thomas*, the Ore-

gon Supreme Court explained that an employer is "in charge" of the work within the meaning of ORS 654.305 if he is only in charge of an activity which forms a "component part" of a common enterprise.

■ Defendant argues that here it did not provide any dangerous instrumentality or equipment, that it was not in charge of or responsible for the alleged piece of defective equipment (the bulldozer), and that there was no active cooperation by it in any way directly affecting the deceased. Furthermore, defendant points out that there was no contract between it and decedent's employer, as its contract was with the charterer, who, in turn, contracted with the stevedore. These facts, claims the defendant, preclude coverage under the Act and the above cases construing it.

■ I disagree. The charter under which this vessel operated contained a provision, set out above, whereby the defendant agreed that the stevedores were to be under the *"direction and control"* of the master. One need not be a semanticist in order to hold that this phrase clearly falls within the statutory language "having charge of or responsible for".

■ The vessel's chief mate had specific responsibilities in loading the cargo, which included the preparation of a cargo plan, conferences with representatives of the stevedore company relating to the work, and his remaining available to direct the crew to give necessary assistance, if any, to the stevedore company. He had other duties which included aiding the stevedore company in preparing a stowage plan and seeing that it was implemented. The third mate's duties included inspection of the vessel for damage done while loading. In addition, a crew was on board at all times performing the normal duties of maintenance and upkeep. It would seem that these facts meet the language of *Pruett* to the effect that there must be an "operational commingling" of the employees of the two employers.

A similar case is Hess v. United States, 282 F.2d 633 (9th Cir. 1960). The decedent was working on a tug owned and operated by an independent contractor, which was repairing portions of Bonneville Dam. As plaintiff was working on the tug below the dam, employees of the Government positioned the spillway gates, causing turbulence, in which the tug overturned, thus resulting in decedent's death. The Ninth Circuit stated:

"In our view, however, an owner who remains in possession and through its own employees continues active work thereon must accept responsibility for the risks and dangers associated with such work, despite any contractual arrangement it may have to perform that work in a manner requested by others. It may no more delegate its responsibility in this regard than may an employer."

■ The Court went on to say that a shoulder-to-shoulder commingling of the employees of the two employers was not required:

"There was here a commingling of function or duty between Graham and the employees of the government. A contractual relationship existed between their respective employers, and the positioning of the spillway gates by the government's employees had a direct effect upon the performance of Graham's duties. A shoulder-to-shoulder commingling is not required."

It is clear that a shipowner must exercise reasonable care to provide a subcontractor or stevedore's employees a safe place to work, despite the fact that the vessel itself might be turned over to the exclusive control of a subcontractor, stevedore, or independent contractor. Lusich v. Bloomfield S. S. Co., 355 F.2d 770 (5th Cir. 1966); Halecki v. United New York and N. J. Sandy Hook Pilots Assn., 282 F.2d 137 (2d Cir. 1960); 302 F.2d 840 (2d Cir. 1962); Albanese v. N. V. Nederl. Amerik Stoomv. Maats., 382 U.S. 283, 86 S.Ct. 429, 15 L.Ed.2d 327 (1965). These cases, in the light of the Ninth Circuit's opinion in *Hess*,

point to the conclusion that the Oregon Employers' Liability Law should be applied in this situation. Additionally, the evidence supports a finding that had the stevedore's workers been told to remove the Caterpillars on the ground that they were unsafe, they would have done so and had they been told to change them, they would have made the change. Defendant's argument that, as a practical matter, there is no control of the operations of a stevedore does not stand against the assault of common sense. To abdicate control does not point to a lack of control. On the record here, the bulldozer cannot be separated from the ship's equipment because any equipment utilized in loading or unloading a vessel is, for the purpose of the warranty of seaworthiness, the vessel's equipment. Here, there is no doubt that there was the "operational commingling" of the employees of the two employers, which was fixed as one of the grounds for liability in Pruett v. Lininger, supra. Neither Bassick v. Portland General Elec., 84 Or.Adv.Shts. 661, 426 P.2d 450 (April, 1967), nor Penrose v. Mitchell Bros. Crane Div., 84 Or.Adv.Shts. 651, 426 P.2d 861 (April, 1967) are of assistance to the defendant. In *Penrose*, the Court held that the Employers' Liability Act applied to the facts, while in *Bassick* the only issue litigated was whether the employees, who negligently caused the injury, were adoptive employees of the defendant. Plaintiff there conceded that defendant had no control over the operation.

### (2) CAN THE ACT BE CONSTITUTIONALLY APPLIED?

■ Here, the defendant contends that even if the Employers' Liability Act is factually applicable, it cannot be constitutionally applied to the facts in this case. It argues that to subject the defendant to the greater exposure under the Employers' Liability Act would constitute an unreasonable burden on interstate and foreign commerce and would be a denial of due process and equal protection. Cited in support of its position is Swift & Co. & Armour & Co. v.

Peterson, 192 Or. 97, 233 P.2d 216 (1951). The *Peterson* case was decided by the Oregon Supreme Court long before the decision of the United States Supreme Court in Hess v. United States, supra, where the Court employed the Oregon Employers' Liability Act and held that it did not impair the traditional admiralty principles of uniformity. The application of the provisions of the Oregon Employers' Liability Act here mentioned would, in my opinion, in no way place an undue burden on interstate or foreign commerce.

### (3) ARE PLAINTIFFS ENTITLED TO RECOVER UNDER THE DOCTRINE OF UNSEAWORTHINESS?

■ It is my view that the doctrine of unseaworthiness can, under the facts as now before me, be a ground for recovery under the Oregon Wrongful Death Statute, ORS 30.020. Curry v. Fred Olsen Line, 367 F.2d 921 (9th Cir. 1966). The California death statute, involved in that case, is almost identical to Oregon's. The great weight of authority supports this view. Union Carbide Corp. v. Goett, 278 F.2d 319 (4th Cir. 1960); Holley v. The Manfred Stansfield, 269 F.2d 317 (4th Cir. 1959). Since this is a diversity case, the doctrine taught in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is obligatory. I feel that if the Oregon Supreme Court was faced with the question of incorporating the doctrine of unseaworthiness into its wrongful death statute, it would follow the logic of the authorities above cited and permit recovery under the statute. For that matter, the public policy manifested by enactment of the Oregon Employers' Liability Act, requiring an exceptionally high degree of care, would seem to indicate that the Oregon Court would view the application of unseaworthiness doctrine with considerable favor. The doctrine of unseaworthiness may be employed as a ground for recovery under the Act, on the facts in this case.

Although I am convinced that the death statute limitation imposed in The Tungus v. Skovgaard, 358 U.S. 588, 79

S.Ct. 503, 3 L.Ed.2d 524 (1959) will be treated with disdain on the occasion of its next consideration by the Supreme Court, I feel I am bound by that decision. Consequently, the maximum recovery under the Oregon Death Statute, even when applied in admiralty law, is $25,000.00. Anticipating, however, that an appellate court may take a different view, I believe the trier of the facts in this case might well go forward and assess damages as if no limitation existed. Of some significance, is the fact that the last session of the Oregon Legislature removed the limitation.

(4) ARE DAMAGES RECOVERABLE FOR DEATH UNDER THE GENERAL MARITIME LAW?

■ It is well established that admiralty confers no right of action for a wrongful death. The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886); The Tungus v. Skovgaard, supra. Here ..in, the law may be changed the next time this question reaches the Supreme Court.

(5) ARE SAFETY AND HEALTH REGULATIONS FOR LONGSHORING APPLICABLE, AND DOES FAILURE TO COMPLY PER SE RENDER A VESSEL UNSEAWORTHY?

■ I am impressed with the legal philosophy employed in Provenza v. American Export Lines, Inc., 324 F.2d 660 (4th Cir. 1963), supporting the view that safety and health regulations for longshoring are admissible in evidence on the issue of unseaworthiness. The weight of authority seems to support this view. Reid v. Quebec Paper Sales, 340 F.2d 34 (2d Cir. 1965). The Second Circuit case of Albanese v. N. V. Nederl. Amerik Stoomv. Maats., 346 F.2d 481 (1965), holding to the contrary, was reversed by the United States Supreme Court, 382 U.S. 283, 86 S.Ct. 429, 15 L.Ed.2d 327 (1965). However, I do not believe that a violation of these regulations would *per se* render a vessel unseaworthy.

Left for trial, as I understand it, are the issues: (1) was the tractor de-

fective so as to create an unseaworthy condition which proximately caused the injuries, and (2) if so, the amount of damages to be allowed.

This opinion shall serve as *my findings* and conclusions on the issues submitted.