543

Argued and submitted March 6, reversed and remanded May 26, 1981

# CODY,
*Appellant,*

*v.*

# DISCO, INC.,
*Respondent.*

## (No. 36-960, CA 17296)

628 P2d 766

Barbee B. Lyon, Portland, argued the cause for appellant. With him on the briefs were John E. Frohnmayer, and Tonkon, Torp, Galen, Marmaduke & Booth, Portland.

Mildred J. Carmack, Portland, argued the cause for respondent. With her on the brief were Wayne A. Williamson, and Schawbe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is an action for negligence brought by a California worker against an Oregon employer. The trial court dismissed plaintiff's complaint on the ground that plaintiff's action was barred by Oregon's Workers' Compensation Law. Plaintiff appeals.

The facts are not in dispute. In 1974, plaintiff, a truck driver, was hauling sugar out of San Jose, California, for Refrigerated Transport Co., Inc. (RTC), a Georgia corporation doing business in California. The sugar was packaged in twenty-five pound bags which were stacked on pallets. Each loaded pallet weighed approximately 2750 pounds. Plaintiff was directed to deliver about one-fourth of his load to defendant's store in Beaverton, Oregon. Plaintiff had never made a delivery to defendant before. When he arrived at defendant's store, he was told by defendant's employee where to unload. Plaintiff's contract made him responsible for unloading. Defendant's employees were not required to assist in the unloading, but only to verify the delivery.

One of defendant's employees volunteered to help plaintiff unload. That employee fetched a piece of metal to make a bridge between the loading dock and the truck trailer and brought out a pallet jack which truckers frequently use while unloading. As defendant's employee began jacking up the first pallet, one of the pallet boards broke. The pallet was jacked up again and plaintiff and defendant's employee both were working to move it when the load became stuck on a splinter of wood from the broken board. As plaintiff attempted to remove the splinter, the load shifted and some of the bags of sugar fell on plaintiff, injuring his back.

Plaintiff is covered by California workers' compensation, and he has received benefits from that source. Plaintiff brought this action against defendant as a third party whose negligence he alleged caused his injuries. In the trial court defendant argued that plaintiff was not entitled to bring this action, citing ORS 656.154(1),[1] which provides:

---

[1] This defense was abolished by Or Laws, 1976, Ch 152, effective July 1, 1975. The amendment is not retroactive to injuries which occurred prior to the effective date of repeal. *Cole v. Zidell Explorations, Inc.,* 275 Or 317, 550 P2d 1194 (1976).

"If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman, or if death results from the injury, his widow, children or other dependents, as the case may be, may elect to seek a remedy against such third person. However, no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the employer of the injured workman and was an employer subject to ORS 656.001 and 656.794."

Plaintiff contends that the defense of joint supervision and control is not available here because his California employer was not covered by Oregon's workers' compensation law. He contends further that, even if the defense is available, it does not apply because he was engaged in a "pickup or delivery." ORS 656.154(3) provides:

"No person engaged in pickup or delivery of any goods, wares or merchandise to or from the premises of any employer other than his own shall be deemed to have joint supervision or control over the premises of a third party employer."

Assuming *arguendo* the "joint supervision and control" provision of ORS 656.154(1) would otherwise apply here, it would clearly be inapplicable if plaintiff was "engaged in pickup or delivery" within the meaning of ORS 656.154(3).

On its face, ORS 656.154(3) would appear to apply to the activity in which plaintiff was engaged at defendant's store at the time of his injury. However, the Supreme Court has interpreted ORS 656.154(3) to exclude much activity which would appear to a layman to be "pickup or delivery."

In *Boling v. Nork,* 232 Or 461, 375 P2d 548 (1962), the Supreme Court determined the legislature did not intend the pickup and delivery exception

"* * * to apply to operations such as loading logs, unloading logs, and like activities which ordinarily require the massing of men and machinery for such purposes." 232 Or at 465.

The court applied this "massing of men and machinery" analysis in *Childers v. Schaecher Lbr. Co.,* 234 Or 230, 380 P2d 993 (1963)(logging operations); *Gorham v. Swanson,*

253 Or 133, 453 P2d 670 (1969)(loading of two-ton bundles of lumber with a forklift); *Patnode v. Carver Electric,* 253 Or 89, 453 P2d 675 (1969)(unloading heavy electrical equipment with a forklift); and *Cogburn v. Roberts Supply,* 256 Or 582, 475 P2d 67 (1970)(unloading 16 to 24 foot lengths of culvert pipe weighing about 600 pounds). *Hadeed v. Wil. Hi-Grade Concrete Co.,* 238 Or 513, 395 P2d 553 (1964), involved a defendant whose employers delivered as many as 100 truckloads of concrete per day to plaintiff's employer's construction site. Each delivery required cooperation between defendant's drivers and plaintiff's hod carriers, who hauled the concrete away in wheelbarrows. The court held:

"* * * [T]here are found·here a concert of effort and a mingling of the employees of both employers and their common exposure to the hazards of the work going forward, all designed to facilitate its accomplishment. Within the construction heretofore placed by us upon ORS 656.154 (see, e.g., *Pruett v. Lininger et al,* 224 Or 614, 356 P2d 547 (1960)), the premises where plaintiff was injured were premises over which the two employers had joint supervision and control." 238 Or 516-17.

In *Green v. Market Supply Co.,* 257 Or 451, 479 P2d 736 (1971), plaintiff was injured while voluntarily helping defendant's employees load a 400 pound meat grinder. The court said:

"It is apparent that in deciding *Boling v. Nork* we had in mind a continuum, running from the simple delivery of a parcel on one end to a complex operation requiring the 'massing of men and machinery' on the other. We think this case falls somewhere in the middle and is a pickup and delivery situation as those words are commonly used. We are persuaded to that conclusion by the findings of the trial court that (1) defendant's employees were exclusively responsible for making the delivery; (2) they were capable of accomplishing it themselves; (3) it was not necessary for any employee of Fred Meyer, Inc., to help with the delivery; and (4) it was not necessary to use any machinery to make the delivery." 257 Or at 455-56.

In *Perkins v. Willamette Industries,* 273 Or 566, 542 P2d 473 (1975), the defendant operated a lumber and plywood operation which produced wood shavings as a byproduct. The shavings were blown into large bins in which they were stored pending removal. When a bin became full,

defendant would notify plaintiff's employer, Timber By-Products, Inc., and a truck would be dispatched by Timber By-Products to haul the shavings to a processing plant in Albany. In order to empty the bins and collect the shavings, the truck drivers for Timber By-Products would park under the bin doors, pull a pin attached to a handle and swing the handle open, thus allowing the doors to open and dumping the shavings into the truck. After the shavings had fallen, the doors would partially close automatically and would be shut by the truck driver using the handle, or a winch, and a counterweight. The driver would use a T-shaped bar to hold the doors closed while he reinserted the pin that locked the doors.

Normally, three to four trips daily were made to defendant's plant by Timber By-Products truck drivers to empty the bins and haul away the shavings. Other than directing the drivers to the particular bin to be emptied, none of defendant's employees were specifically authorized or directed to assist the truck drivers in loading the shavings. Occasionally, however, some of defendant's employees voluntarily assisted the truck drivers in closing the bin doors. Defendant was solely responsible for the maintenance and repairs of the bins.

At the time of the accident, plaintiff was a truck driver for Timber By-Products and was collecting the shavings from one of the bins at defendant's plant. Plaintiff was injured when the door closing mechanism malfunctioned while plaintiff and one of defendant's employees were attempting to close the bin door. The Supreme Court said:

"We believe that there was ample evidence to support the trial court's finding that defendant had joint supervision and control with plaintiff's employer over the premises and that both employers were engaged in the furtherance of a common enterprise.

"As we stated in *Deitz v. Savaria, Smith, supra,* [260 Or 538, 491 P2d 620 (1971)]:

" '* * * The term "joint supervision and control" describes a situation in which each employer has control of his employees' activities and, thus, through them has some control of the conditions under which his employees and the employees of the other employer must work. * * *' 260 Or at 542-43.

Thus, if there is an operational commingling of workmen, there may be joint supervision and control even though

only one of the covered employers may be said to be in actual control over the site where the work is performed and over the instrumentality that causes the harm." (Citations omitted.) 273 Or at 572-73.

The court distinguished *Perkins, supra,* from *Green, supra,* in two ways. First, the drivers in *Perkins* made several trips each day to defendant's lumber mill; second, the loading in *Perkins* involved the use of industrial machinery.

*Misner v. Hercules, Inc.,* 275 Or 669, 552 P2d 542 (1976), involved a delivery of formaldehyde. Plaintiff and defendant's employee worked together to bypass defendant's defective pump after defendant's employee had shown plaintiff where to pump the formaldehyde and had assisted him in hooking up his hose and opening the valves. The court found there was no massing of men and machinery and no continuing course of conduct involving the efforts of both employees in the furtherance of a common objective and therefore the pickup or delivery exception applied.

The question here is where on the continuum recognized by the Supreme Court in *Green, supra,* do the facts of this case fall?

■ Plaintiff was making his first delivery to defendant's store; there was no "continuing course of conduct with a common goal involving cooperation" between plaintiff and the defendant. There was no "massing of men and machinery." One of defendant's employees volunteered to assist plaintiff, and they attempted to use a hand-operated pallet jack. When the jack proved ineffective, the sugar was unloaded by hand, as it probably would have been had plaintiff unloaded it by himself. Plaintiff's contract required that he unload the sugar himself or have it unloaded at his own expense. No one was hired by plaintiff to help unload, and it is reasonable to assume that he would have done so by himself, had defendant's employee not volunteered to help.

We conclude that the facts here support a finding that a delivery within the pickup or delivery exception occurred and we therefore hold that the defense of joint supervision is not available to defendant. For this reason we find that the trial court erred in dismissing plaintiff's complaint.

■ Defendant contends that even if the defense of joint supervision is not available, plaintiff's action should not be allowed because defendant's relationship with plaintiff at the time of the injury was that of "special employer." Despite the fact that he is in the general employment of another, a worker who becomes the special or borrowed employee of an employer subject to the Workers' Compensation Act may not sue the special employer for negligence, but must look to the Act for benefits for injuries arising from that employment. *Warner v. Synnes, et al,* 114 Or 451, 230 P 362; 235 P 305 (1925).

■ The facts of this case lend no support to defendant's contention that plaintiff was a special employee. Plaintiff was a trucker making a delivery as required by his contract with RTC. No Oregon authority supports the proposition that such an individual is a special employee. The trial court correctly rejected this defense.

Reversed and remanded.