Argued March 6, reargued October 7, 1968, affirmed April 23, 1969

GORHAM, *Appellant, v.* SWANSON ET AL,
*Respondents.*

453 P2d 670

*Duane Vergeer,* Portland, argued the cause for appellant. On the briefs were Vergeer, Samuels, Cavanaugh & Roehr and Walter H. Sweek.

*Richard Bryson,* Eugene, argued the cause for respondents. On the brief were Calkins & Bryson.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

McALLISTER, J.

This is a third party action by a surviving spouse for the alleged wrongful death of a workman and raises again the application of the "joint supervision or control" and the "pickup or delivery" provisions of ORS 656.154.

The decedent, Wayne E. Gorham, was employed as a truck driver by Wilhelm Trucking Company. On July 9, 1966, while his truck was being loaded with lumber at defendants' sawmill in Noti, decedent was fatally injured and died leaving the plaintiff widow surviving him. Both of the employers, Wilhelm Trucking Company and Swanson Bros. Lumber Co. were subject to the Workmen's Compensation Law of which ORS 656.154 is a part.

The truck was being loaded with about 15,000 feet of lumber banded with steel bands into separate bundles, each about 36 inches wide and each weighing about 4,000 pounds. Both the truck and trailer were to be loaded with three bundles, two side by side on the bottom, with a third bundle centered on top. There were four bundles 16 feet or longer for the bottom of the loads and two bundles 14 feet or shorter for the top.

The bundles were being placed on the truck by means of a lift truck with 42-inch forks operated by Wilbert Adank, a mill employee. As the first step in the loading the truck driver placed on the beds of the truck and trailer 2 x 4 crosspieces on which to set the bundles of lumber. As Adank placed the bundles on

the truck the decedent helped by spotting the loads. Adank testified:

"Q Earlier you said that Mr. Gorham was spotting the load as you were loading it. What did you mean by that?

"A Well, he sees that they are put on the truck where he wants them for weight distributed where he wants it for his axle weight, and so forth.

"Q Would you describe how he does that?

"A Well, he just tells you how far to go in with them, and where to set them down, where he wants the end of his load, and so forth.

"Q Did he signal to you in any way to do anything?

"A Well, he talked or hollered at me there different times where he wanted it, but I couldn't see where he was standing."

After the bottom bundles were loaded the truck driver climbed up and placed crosspieces on which to place the top bundles. It was necessary to place the top bundles as close to the center of the truck as possible. The forks of the lift truck were not long enough to center the lumber with one set. It was necessary to set the bundle down and pull the forks part way out, pick the bundle up again and move it forward. In the process of attempting to center the top bundle the lumber shifted, the bands broke and the spilled lumber injured the decedent. The truck driver was helping Adank to center the top bundle when the accident occurred. Adank testified:

"Q Why were you moving it [the bundle] over this way?

"A That is where he wanted it.

"Q That is where who wanted it?

"A The truck driver.

"Q As a matter of fact, did you ever get it over as far as he wanted it?

"A Not as far as I know, no.

"Q And once again how did he signal you to move it over?

\* \* \* \* \*

"A He just hollered to bring it in further."

If the loading had been completed the driver would have then fastened the load onto the truck with chain or cable binders.

The trial court found that both employers had joint supervision and control over the loading operation and that the operation was not a pickup within the meaning of ORS 656.154 (3). The trial court entered judgment for defendants and plaintiff appeals.

This case is indistinguishable on the facts from many of our prior cases, particularly those arising out of the loading or unloading of logs by the joint efforts of the truck driver and an employee of the logger or sawmill operator. See: *Beers v. Chapman,* 230 Or 553, 370 P2d 941 (1962); *Nelson et al v. Bartley et al,* 222 Or 361, 352 P2d 1083 (1960); *Claussen v. Ireland,* 216 Or 289, 338 P2d 676 (1959); and *Long v. Springfield Lumber Mills,* 214 Or 231, 327 P2d 421 (1958). Those cases are controlling on the issue of joint supervision and control. Whether a truck and trailer are loaded with six bundles of lumber, each weighing about two tons, or an equal number of logs would seem to be of no significance.

In 1959 ORS 656.154 was amended by adding subsection 3, which is commonly called the pickup and delivery amendment, reading as follows:

"No person engaged in pickup or delivery of any goods, wares or merchandise to or from the

premises of any employer other than his own shall be deemed to have joint supervision or control over the premises of a third party employer."

We have construed that amendment in three cases and held that it did not apply to operations such as took place in this case: *Boling v. Nork*, 232 Or 461, 375 P2d 548 (1962) (loading logs); *Childers v. Schaecher Lbr. Co.*, 234 Or 230, 380 P2d 993 (1963) (unloading logs); *Hadeed v. Wil. Hi-Grade Concrete Co.*, 238 Or 513, 395 P2d 553 (1964) (unloading ready mix concrete).

We decided *Boling v. Nork* in 1962. After carefully considering the legislative history of the amendment, its key expressions of "pickup or delivery" and "goods, wares or merchandise" and our prior decisions, we expressed with particularity what in our best judgment was the legislative intent of the enactment. We said:

"We believe that if the Assembly had intended the words 'pickup or delivery' to apply to operations such as loading logs, unloading logs, and like activities which ordinarily require the massing of men and machinery for such purposes, it would have used language clearly describing such activities. The words 'pickup or delivery' do not describe the combination of heavy machinery and rigorous labor involved in logging operations either at the landing in the woods or at the pond where the logs are eventually dumped. The ordinary meaning of the words 'pickup or delivery' cannot be extended to cover the combined efforts of the workmen in this case.

❖ ❖ ❖ ❖ ❖

"We hold that ORS 656.154(3) was intended to, and does, codify the rule found in Johnson v. Timber Structures, supra, in that ordinary pickup-and-delivery situations, as those words are commonly understood, do not bring the premises under the joint supervision and control of any other employer than the one upon whose premises the pickup or

delivery is being made. The amendment does not cover logging operations as they are commonly conducted in the industry, and as they are described in the cases we have cited." 232 Or at 465-466.

Our 1962 interpretation of ORS 656.154 (3) in *Boling v. Nork*, supra, was followed in *Childers v. Schaecher Lbr. Co.*, supra, decided in 1963, and *Hadeed v. Wil. Hi-Grade Concrete Co.*, supra, decided in 1964.

It is argued that we erroneously construed the pickup or delivery amendment in *Boling v. Nork* and that we should re-examine the question and overrule the three cases interpreting that amendment. For the reasons hereinafter set out we decline to do so.

In the first place we think our interpretation of the amendment was proper. The amendment, ORS 656.154 (3), was enacted by Oregon Laws 1959, ch 504, sec 1. The phrase "pickup or delivery" can be interpreted either broadly or narrowly. It is manifest from the legislative history that the legislature intended the phrase to be interpreted narrowly. The amendment was incorporated in House Bill 252, introduced by Representative Whelan at the request of the AFL-CIO. The measure, as introduced, read as follows:

> "No person engaged in pickup or delivery of any goods, wares or merchandise to or from the premises of any employer other than his own, *or engaged in work incidental to such pickup or delivery,* shall be deemed to have joint supervision or control over the premises of a third party employer." (Emphasis added.)

The sponsors obviously intended to insure that pickup or delivery received the broadest possible interpretation by coupling it with the phrase "or engaged in

work incidental to such pickup or delivery." The measure was opposed in the Senate however and the opposition centered on the phrase "or engaged in work incidental to such pickup or delivery."[1] It was not until that phrase was deleted that the measure was enacted into law. The only purpose of stripping out the "incidental" phrase was to narrow the meaning of the remaining phrase "engaged in pickup or delivery."

In the second place the legislature has met in three biennial sessions since our interpretation of ORS 656.154 (3) in *Boling v. Nork*. No change has been made in the statute by the legislature at any of those sessions. If we misinterpreted the statute the legislature could have and may in the future amend the statute to reject our interpretation and clarify its purpose. In the face of the legislative history of the

[1] Extracts at hearing before Senate Judiciary Committee, April 27 and 28, 1959:

"Mr. Wm. Morrison, an attorney, Portland, stated there is danger in the clause, 'incidental to employment'. This would ruin loggers, and run them right out of business, he felt."

"Mr. Pete Brooks, Oregon Auto Insurance Company, said that his company was opposed to language 'or engaged in work incidental to pickup and delivery'. Mr. Franklin said they would concede that that could be stricken, but did not think it would cause the dire results that they thought it would. Atkinson vs. Fairview Farms is a case where a man was delivering milk to Fairview Farms, and he helped the man do some little chore, and the Supreme Court said he was engaged in something more than pickup and delivery."

"Senator Francis inquired if it did not leave a great area where there still is some doubt. Mr. Franklin said it would only apply to the one area."

"Senator Francis inquired if the language 'or engaged in work incidental to such pickup or delivery' were deleted, what would the status be. Mr. Franklin said if that were deleted, under the Supreme Court decisions, he would be covered under the State Industrial as well as for third party claims."

"Senator Lewis moved that the language on lines 20 and 21 on page 1 of the printed bill ', engaged in work incidental to such pickup or delivery,' be deleted. Senator Dimick seconded the motion. Motion carried unanimously."

amendment and the passage of three regular sessions without legislative criticism of our interpretation we prefer to adhere to our interpretation of the amendment and leave any change to legislative action.

Plaintiff argues that the tariff under which this lumber was being shipped required the defendants to do the loading. We think the applicability of the statute must be determined by what was being done by the workmen at the time of the injury. It is clear from the evidence that the loading involved in this case was being conducted in accordance with the usual practice at defendants' mill.

The judgment of the trial court is affirmed.

DENECKE, J., dissenting.

The majority holds that the decedent, a truck driver on the defendant's premises, who volunteered to assist defendant's lift truck operator in loading the truck was in joint supervision and control of the premises and was not engaged in a pickup or delivery.

This is one of the most uncertain areas of Oregon law. The majority decision does bring certainty to this uncertain area. However, I cannot join such a decision because in my opinion certainty is achieved by reading any meaning out of the pickup or delivery amendment.

As we indicated in *Boling v. Nork,* 232 Or 461, 375 P2d 548 (1962), the legislative history of the pickup or delivery amendment indicates that the legislative committee intended to overrule *Atkinson v. Fairview Dairy Farms,* 190 Or 1, 222 P2d 732 (1950). The rationale of the *Atkinson* case was stated to be:

"It seems to us that the Inwall case, supra, is decisive of the case at bar for, under the facts in the instant case, the plaintiff, driver of the co-op,

participated in many more activities in the processing of the milk than did Inwall in the loading of the lumber onto the vessel. As plaintiff's own witness said, there was 'general cooperation to get them (the cans) in the lineup to the scales.' " 190 Or at 10.

After the pickup or delivery amendment we continued to decide that when pickup or delivery involved significant physical intermingling and cooperative effort between the driver and the employees of the shipper or receiver, it was not a pickup or delivery within the meaning of the amendment and, therefore, the injured workman was barred from bringing a third-party action because he and the shipping or receiving employer were in joint supervision and control of the premises where the injury occurred. That is the rationale of the majority opinion in this case.

When I initially considered this case I was of the opinion that it could be distinguished from the logging cases and *Hadeed v. Wil. Hi-Grade Concrete Co.,* 238 Or 513, 395 P2d 553 (1964). The logging cases appeared to emphasize that in ordinary parlance the loading and unloading of logs are not referred to as a pickup or delivery. Also, this operation required close cooperation between the two sets of employees and their machines. In the *Hadeed* case close cooperation between the driver and the hod carrier was essential to efficiency. In the instant case the loading of lumber for shipment can be appropriately described as a "pickup"; cooperation between the driver and the loader was not essential or even contemplated. The lumber was being shipped pursuant to a tariff which provided that the shipper had the cost and responsibility for the loading. The driver could have left the premises while the lumber was being loaded.

After more consideration I concluded that while such distinctions could reasonably be made, a decision on such basis would only further complicate an already confused area. I finally determined that the only solution which would give the pickup or delivery amendment any viability and which would create some certainty is to overrule our prior pickup or delivery decisions and hold that any operation which reasonably could be termed a pickup or delivery would be so regarded under the statute regardless of the degree of cooperation and intermingling among the employees.

The pickup or delivery amendment must have been enacted to end the confusion in at least one area in which there was an intermingling and cooperative effort among the employees of several employers. Prior to the amendment, if there was an intermingling and joint effort, whether it was in a pickup or delivery situation or in some other situation, we held that the employees of the several employers had joint supervision and control over the premises. If there was no intermingling and cooperative effort, whether in a pickup or delivery situation or otherwise, there was no joint supervision and control.

When the legislature amended the statute and provided that no person engaged in a pickup or delivery would be deemed to have joint supervision and control over the premises of another employer, it seems most likely that their intention was to provide that when there was a pickup or delivery the driver would not be deemed to have joint supervision and control over the premises regardless of the fact that the driver and the third-party employees intermingled and cooperated in the pickup or delivery. When we continue to hold that a driver making a pickup or delivery who intermingled with the third-party employer's em-

ployees and cooperated with them did have joint supervision and control, the pickup or delivery amendment has no effect.

The majority bases its interpretation upon the Senate committee's deletion from the bill of the phrase, "engaged in work incidental to such pickup or delivery." The majority states that the only purpose of such deletion was to narrow the meaning of "pickup or delivery." That is not stated in the committee minutes and no inference can be made from such minutes that those favoring deletion intended that "pickup or delivery" should be narrowed to the confines stated by the majority. The minutes state that the principal sponsor, at the first objection to the phrase, conceded that the phrase could be stricken. The Senator who was the leading exponent of the amendment in its original form seconded the deletion and carried the amendment in its deleted form on the floor. From this it appears that the sponsors were of the opinion that the amendment in its deleted form had the effect of overruling *Atkinson v. Fairview Dairy Farms,* supra (190 Or 1).

A logical reason for deleting the phrase is that it is much more encompassing than the phrase "pickup or delivery." The majority apparently believes that the phrase was deleted so that a driver placing 2 x 4's to assist in the placing of a load upon his truck would not be considered engaging in a "pickup" because he would only be doing work incidental to a pickup. The advocates of deletion may just as reasonably have believed that such phrase was intended to include employees of a subcontractor on a construction job who were assembling equipment at a place on the job to facilitate the future pickup of the equipment and the

committee members did not desire to include such employees.

The other reason stated by the majority for its decision is that the legislature has met in three biennial sessions since *Boling v. Nork,* supra (232 Or 461), and has made no change in the statute. One reasonable explanation for such inaction is that the legislature might not have anticipated that the decedent's conduct in this case consisting of volunteering his services to place crosspieces and directing the placing of bundles would be held comparable to the conduct in *Boling v. Nork,* supra (232 Or 461), and would likewise bar recovery.

SLOAN, J., joins in this dissent.