Argued October 29, 1970, affirmed January 27, 1971

GREEN, *Respondent, v.* MARKET SUPPLY
CO., INC., *Appellant.*

479 P2d 736

Loren D. Hicks and Eugene K. Oppenheimer, Judges pro tempore.

*David C. Landis*, Portland, argued the cause for appellant. On the briefs were Gearin, Hollister & Landis.

*Nels Peterson*, Portland, argued the cause for respondent. On the brief were Peterson, Chaivoe & Peterson.

Before O'Connell, Chief Justice, and McAllister, Denecke, Holman, Tongue and Howell, Justices.

McALLISTER, J.

This is a third party action by an injured workman to recover damages for his personal injuries from a defendant whose negligence allegedly caused those injuries. Both plaintiff and his employer and defendant and its employees were subject to the Workmen's Compensation Law.

Defendant first answered with a general denial and then filed a supplemental answer as authorized by ORS 656.595 alleging that plaintiff's sole remedy was to recover the benefits provided by the Workmen's Compensation Law. The trial court held that plaintiff's action was not barred and the case proceeded

to trial before a jury which returned a verdict for plaintiff. Defendant appeals.

The trial court's decision on the issues raised by the supplemental answer must be affirmed if there is any evidence supporting that decision as a matter of fact. *Cornelison v. Seabold,* 254 Or 401, 409, 460 P2d 1009 (1969). The trial court found that defendant's business was repairing and installing market equipment and that defendant had picked up and repaired a meat grinder for a Fred Meyer, Inc., supermarket in Portland. Defendant's employees were returning the repaired grinder and intended to pick up a loaned grinder which the market had used while its grinder was being repaired.

When defendant's pickup truck bearing the repaired grinder was backed up to the loading dock the truck bed was about two inches lower than the dock. Plaintiff was employed as a meat cutter in the market and was the only employee on duty in the meat department at that time. He agreed to help move the grinder, which weighed about 400 pounds, from the truck onto the loading dock.

One of the defendant's employees directed how the grinder was to be moved onto the dock while the other employee and plaintiff "gave their suggestions and assistance." The plaintiff alleges that he was injured while the three men "with some difficulty shoved and lifted the grinder onto the dock."

On the pertinent issue of joint supervision and control the trial court found as follows:

"The labor and direct cooperation of two or more people were required, but it was not necessary for any employee of Fred Meyer to assist in the unloading operation. Responsibility for ac-

complishing the job belonged exclusively to defendant's employees, and they were capable of accomplishing it alone."

"Fred Meyer and defendant and their employees mentioned herein were all subject to Workmen's Compensation at all times material to this case. The incident in question occurred while all three employees were in the course and scope of their employment."

There is substantial evidence in the record to support all the above findings. The evidence is conflicting on whether defendant's employees asked plaintiff to help unload the grinder or whether he volunteered. The trial court made no finding on that question.

■ We will first consider defendant's contention that plaintiff was barred from suing defendant by ORS 656.154, which reads in pertinent part as follows:

"(1) If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman * * * may elect to seek a remedy against such third person. However, no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the employer of the injured workman and was an employer subject to ORS 656.001 to 656.794.

"(2) As used in this section, 'premises' means the place where the employer, or his workman causing the injury, and the employer of the injured workman, are engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation.

"(3) No person engaged in pickup or delivery of any goods, wares or merchandise to or from the premises of any employer other than his own shall be deemed to have joint supervision or control over the premises of a third party employer."

Whether plaintiff may sue defendant turns on the applicability of paragraph (3) of the above section, commonly known as the "pickup and delivery" amendment.

The pickup and delivery amendment was enacted in 1959 and was first construed in *Boling v. Nork*, 232 Or 461, 375 P2d 548 (1962), in which we held that the amendment did not "apply to operations such as loading logs, unloading logs, and like activities which ordinarily require the massing of men and machinery for such purposes." We further said "the words 'pickup or delivery' do not describe the combination of heavy machinery and rigorous labor involved in logging operations." 232 Or at 465.

The above holding in *Boling v. Nork* was applied in *Childers v. Schaecher Lbr. Co.*, 234 Or 230, 380 P2d 993 (1963) (unloading logs); *Hadeed v. Wil. Hi-Grade Concrete Co.*, 238 Or 513, 395 P2d 553 (1964) (unloading ready mix concrete); *Gorham v. Swanson*, 253 Or 133, 453 P2d 670 (1969) (loading bundles of lumber); *Patnode v. Carver Electric*, 253 Or 89, 453 P2d 675 (1969) (unloading electrical equipment); *Cogburn v. Roberts Supply Co.*, 256 Or 582, 475 P2d 67 (1970) (unloading metal culvert pipe).

On the other hand, we also pointed out in *Boling v. Nork* that the pickup and delivery amendment applied to "ordinary pickup-and-delivery situations, as those words are commonly understood." 232 Or at 465-466. It is apparent that in deciding *Boling v. Nork* we had in mind a continuum, running from the simple delivery of a parcel on one end to a complex operation requiring the "massing of men and machinery" on the other. We think this case falls somewhere in the middle and is a pickup and delivery situa-

tion as those words are commonly used. We are persuaded to that conclusion by the findings of the trial court that (1) defendant's employees were exclusively responsible for making the delivery; (2) they were capable of accomplishing it themselves; (3) it was not necessary for any employee of Fred Meyer, Inc., to help with the delivery; and (4) it was not necessary to use any machinery to make the delivery.

Since the findings of the trial court are supported by the evidence, and those findings support its judgment that plaintiff's action against defendant was not barred by ORS 656.154, we affirm on that issue.

Defendant devotes four assignments of error to its contention that plaintiff was a "mere volunteer" and that defendant would not be liable to a volunteer for the ordinary negligence of its employees, but only for their willful or wanton conduct. Defendant contends that plaintiff was a volunteer because its employees making the delivery had no authority to employ other servants to help perform that task.

■ Assuming that plaintiff volunteered to help defendant's employees unload the grinder, we think the defendant still owed him the duty of reasonable care. This case comes squarely within the rule that one is not a volunteer when he is assisting the employees of another employer in furtherance of the interests of his own employer and that he is owed the duty of ordinary care by the other employer and his employees. A leading case is *Kelly v. Tyra*, 103 Minn 176, 114 NW 750 (1908), in which plaintiff was the employee of a general contractor and was injured by the negligence of the employees of a subcontractor on the same job. At their request he was moving a wheel-

barrow belonging to his employer when a plank was dropped on him. The court held that he was not a mere volunteer:

"* * * A volunteer is one who intrudes himself into matters which do not concern him, or does or undertakes to do something which he is not legally nor morally bound to do, and which is not in pursuance or protection of any interest. * * * To one who is a volunteer, properly speaking, even if assisting in the master's work at the request of a servant, no affirmative duty to exercise care is due originally, but only after knowledge of peril. (Citations omitted.)

"There is, however, an increasing class of cases in which the exercise of proportionate care is held to be due to servants of different masters who assist in the performance of a service mutually beneficial to such employers. Thus a servant of a shipper, who, to prevent delay, aids the servants of a carrier in shunting cars, is not a mere volunteer assisting defendant's servants, although on request, but is regarded as having been on defendant's premises with a purpose of expediting the delivery of his own goods. The carrier is liable to him for the negligence of its servants. (Citations omitted.)" 114 NW at 752.

The court quoted the following from *Welch v. Maine Cent. R. Co.*, 86 Me 552, 30 A 116, 25 LRA 661 (1894):

"* * * 'The distinction running through all the cases is this: that, where a mere volunteer—that is, one who has no interest in the work—undertakes to assist the servants of another, he does so at his own risk. In such a case the maxim of "respondeat superior" does not apply. But where one has an interest in the work, either as consignee or the servant of a consignee, or in any other capacity, and, at the request or with the consent of another's servants, undertakes to assist them, he does not do so at his own risk, and, if injured by

their carelessness, their master is responsible. In such a case the maxim of "respondeat superior" does apply. The hinge on which the cases turn is the presence or absence of [self-]interest. In the one case, the person injured is a mere intruder or officious intermeddler; in the other, he is a person in the regular pursuit of his own business, and entitled to the same protection as any one whose business relations with the master exposes him to injury from the carelessness of the master's servants.' * * *" Id.

In *Pace v. Gibson*, 357 Mich 315, 98 NW2d 654 (1959), plaintiff was employed as a truck driver and in that capacity he delivered heavy merchandise to defendants' place of business. At defendants' request, he assisted in the unloading and was injured in the process. Defendants claimed that they owed plaintiff only the duty not to injure him by willful or wanton acts. The court, quoting extensively from *Kelly v. Tyra*, supra, said that the evidence showed that both plaintiff and his employer were interested in the unloading of the merchandise, and that defendants owed plaintiff the duty of ordinary care. The existence of an "interest" on the part of plaintiff's employer is even clearer in this case; the machine being unloaded belonged to it and there was certainly an interest in getting it unloaded and installed.

In *Geer v. Sound Transfer Co.*, 88 Wash 1, 152 P 691 (1915), plaintiff was assisting in unloading items delivered by defendant's employee to plaintiff's employer's place of business. Defendant claimed that plaintiff was a mere volunteer; the court held that the relationship of the parties permitted an inference that plaintiff was advancing the interests of his employer, and that the question was one for the jury. Earlier cases are collected and discussed.

We hold that plaintiff was not a volunteer and find no merit in defendant's assignments of error devoted to that contention.

■ Defendant also assigns as error the refusal of the trial court to submit to the jury the defense of the assumption of risk. According to defendant, it raised the assumption of risk defense in its "primary sense" by pleading that there was an inherent risk that the meat grinder might be dropped and that plaintiff understood and assumed that risk.

The jury was adequately instructed on the duty of care owed by defendant to plaintiff and on the charges of contributory negligence. Instructing the jury that plaintiff assumed the risk of a negligently caused injury would have been confusing. See *Ritter v. Beals et al*, 225 Or 504, at 520, 358 P2d 1080 (1961).

The judgment of the trial court is affirmed.