Argued May 2, affirmed July 19, 1973

# VETTER, *Appellant*, *v.* PACIFIC MOTOR TRUCKING COMPANY, *Respondent.*

### 512 P2d 785

*Richard H. Muller,* Portland, argued the cause for appellant. With him on the brief were Bouneff, Muller, Marshall & Hawkes, Portland.

*James H. Clarke,* Portland, argued the cause for respondent. With him on the brief were George L. Kirklin, Richard H. Williams, and Dezendorf, Spears, Lubersky & Campbell, Portland.

HOWELL, J.

Plaintiff, an employee of Waterway Terminals Company in Portland, was injured when he was loading a trailer owned by the defendant, Pacific Motor Trucking Company. Both employers were subject to the Workmen's Compensation Act. Plaintiff filed a third party action against the defendant under the provisions of ORS 656.154. The trial court found that the premises where the work was being performed were

under the joint supervision and control of both employers and dismissed the action. Plaintiff appeals.

The facts are not disputed. The plaintiff was employed in a warehouse owned by his employer, Waterway Terminals. The defendant is in the trucking business, hauling material and supplies. Ordinarily, in hauling freight from Waterway's warehouse, the defendant's teamster employees would not only drive the trailers with tractors to the Waterway loading dock, but would also do the loading. However, at the time of plaintiff's accident, the Longshoremen's Union was striking at Waterway, and the defendant's teamster employees would not cross the picket lines. Consequently, an agreement was reached whereby the defendant's employees drove the tractors and trailers up to the picket line, and defendant's supervisory employees then drove the tractors and trailers to the loading dock. The defendant's employee would block the front wheels of the trailer, unhitch the trailer, and move the tractor out to secure another trailer. After the trailer was loaded by Waterway employees, it would be hauled away following the same procedure.

Because of the strike, defendant was paying plaintiff's employer, Waterway, for the labor expenses in loading the trailers.

At the time of the accident, plaintiff was using a grab truck to load the trailer with rolls of paper which weighed 2,500 to 3,000 pounds. The trailer slipped away from the dock and plaintiff fell. Apparently the brakes on the trailer were not set or the front wheels of the trailer were not blocked properly.

Other than the cargo to be loaded, the record is not clear as to whether the defendant exercised any

control over plaintiff's activities through plaintiff's employer.

The joint supervision and control statute, ORS 656.154, states, in pertinent part:

"Injury due to negligence or wrong of a person not in the same employ as injured workman; remedy against such person. (1) If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman, or if death results from the injury, his widow, children or other dependents, as the case may be, may elect to seek a remedy against such third person. However, no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the employer of the injured workman and was an employer subject to ORS 656.001 to 656.794.

"(2) As used in this section, 'premises' means the place where the employer, or his workman causing the injury, and the employer of the injured workman, are engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation.

"(3) No person engaged in pickup or delivery of any goods, wares or merchandise to or from the premises of any employer other than his own shall be deemed to have joint supervision or control over the premises of a third party employer."

■ The plaintiff argues, although not seriously, that he was within the purview of the pickup and delivery exception in the above statute and therefore not on premises under the joint supervision and control of both employers. This court has held on several occasions that plaintiffs under similar facts were not engaged in pickup or delivery of goods at the time of the accident. *Cogburn v. Roberts Supply,* 256 Or 582,

475 P2d 67 (1970); *Gorham v. Swanson,* 253 Or 133, 453 P2d 670 (1969); *Patnode v. Carver Electric,* 253 Or 89, 453 P2d 675 (1969).

In order for plaintiff's action to be barred in this case it must appear (1) that the defendant or his workman causing the injury had joint supervision and control with plaintiff's employer over the premises where the injury occurred, and (2) that defendant and plaintiff's employer were engaged in the furtherance of a common enterprise or in the accomplishment of the same or related purposes in operation. *Deitz v. Savaria, Smith,* 260 Or 538, 491 P2d 620 (1971).

In *Pruett v. Lininger et al,* 224 Or 614, 356 P2d 547 (1960), we stated:

> "* * * [T]he exclusive coverage of the Workmen's Compensation Act applies when there is an operational co-mingling of the workmen of two or more covered employers *even though only one of the covered employers may be said to be in actual control of the site where the work is under way."* (Emphasis added.) 224 Or at 623.

*See also Thomas v. Foglio,* 225 Or 540, 358 P2d 1066 (1961).

■ In the instant case, although plaintiff was the only one in or around the trailer at the time of the accident, the plaintiff's employer exercised control over the premises because of the right to designate how the loading was to be done and by whom. The defendant employer exercised control over the same premises by spotting the trailer at the dock and designating what cargo was to be placed in the trailer. Both employers had employees working on the same premises—the loading dock and the trailer—and each employer exercised control over his employees on those

premises. Through their employees both employers were exercising control over the same premises.

We conclude that the facts in the instant case meet the test set forth in *Pruett*: there was an operational commingling of the workmen of two employers and the premises were under the joint supervision and control of both employers.

■ We also believe that both employers were engaged in the furtherance of a common enterprise or in the accomplishment of the same purpose. The objective of both employers was to keep freight moving. To do so the employers entered into the agreement whereby the supervisory personnel of defendant moved the trucks past the picket line to the loading dock. Thereafter, pursuant to the agreement, the defendant paid Waterway's employees to move the freight from the warehouse onto the trailer. The action by the plaintiff's employer was vital to the transportation of the freight, for without the cooperation of Waterway, no freight could have been moved by defendant during the strike. The plaintiff's employer cooperated extensively since the normal warehouse operation did not require Waterway employees to load the trailers. Our conclusion finds support in *Hecker v. Crown Mills,* 229 Or 8, 365 P2d 840 (1961), and *Inwall v. Transpacific Lumber Co.,* 165 Or 560, 108 P2d 522 (1941).[1]

Affirmed.

---

[1] In Hecker v. Crown Mills, 229 Or 8, 365 P2d 840 (1961), sacks of flour were being moved from a warehouse to a steamship. Plaintiff was injured when he stepped in a hole in the wharf's floor. At the time there were two crews involved in the loading operation. The defendant's employees brought the sacked flour on lift trucks from the warehouse to a place on the cold deck. The longshoremen, including the plaintiff, would load the sacks of

(Continued on page 202)

TONGUE, J., specially concurring.

I concur in the result of the majority opinion, but solely for the reason that the basic issues presented for decision in this case have been previously decided adversely to the plaintiff by the majority of this court in previous cases, including *Gorham v. Swanson*, 253 Or 133, 453 P2d 670 (1969), among others.

---

(Continued from page 201)

flour on their lift trucks and haul them to the wharf near a hatch of the vessel where they would be hoisted aboard. Longshoremen would go to the warehouse to check on what was to be loaded and the defendant's warehouse foreman would have to go on the ship at times. The court found there was significant intermingling of the employees and held that both employers had joint supervision and control over the place where the injury occurred and both were engaged at the place of the plaintiff's injury in a common enterprise of loading the flour onto the vessel.

Inwall v. Transpacific Lumber Co., 165 Or 560, 108 P2d 522 (1941), involved loading lumber on a steamship. During the loading operations, carriers operated by defendant's employees continuously brought lumber to the edge of the dock near the hatch. The plaintiff and other stevedores would step aside until the lumber was deposited and then proceed to attach the slings of the vessel and hoist the lumber onto the ship. The plaintiff was injured when a carrier collided with him on the loading dock. Since the work of both crews was essential to the purpose of moving the lumber from the mill yard to the hold of the ship, this court held that the two sets of employees were engaged in the furtherance of a common purpose.