Argued September 10, affirmed November 20, 1975

PERKINS, *Appellant, v.* WILLAMETTE
INDUSTRIES, INC., *Respondent.*

542 P2d 473

*Richard T. Kropp,* of Emmons, Kyle, Kropp & Kry-

ger, Albany, argued the cause and filed briefs for appellant.

*Richard A. Roseta,* Eugene, argued the cause for respondent. With him on the brief were William G. Wheatley, and Jaqua & Wheatley, Eugene.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

HOWELL, J.

Plaintiff filed this action to recover damages for personal injuries which he incurred on premises of the defendant in Dallas, Oregon. Defendant filed a supplemental answer alleging that defendant and plaintiff's employer shared joint supervision and control of the premises and that, therefore, under ORS 656.154 plaintiff was restricted to the benefits of the Workmen's Compensation Act. The trial court found for defendant, and plaintiff appeals.

Both the defendant and plaintiff's employer are subject to the Workmen's Compensation Act. At the time of the accident, the defendant operated a lumber and plywood operation which produced wood shavings as a by-product. The shavings were blown into large bins in which they were stored pending removal. When a bin became full, defendant would notify plaintiff's employer, Timber By-Products, Inc., and a truck would be dispatched by Timber By-Products to haul the shavings to a processing plant in Albany. In order to empty the bins and collect the shavings, the truck drivers for Timber By-Products would park under the bin doors, pull a pin attached to a handle and swing the handle open, thus allowing the doors to open and dumping the shavings into the truck. After the shavings had fallen, the doors would partially close automatically and would be shut by

the truck driver using the handle, or a winch, and a counterweight. The driver would use a T-shaped bar to hold the doors closed while he reinserted the pin that locked the doors.

Normally, three to four trips daily were made to defendant's plant by Timber By-Products truck drivers to empty the bins and haul away the shavings. Other than directing the drivers to the particular bin to be emptied, none of defendant's employees were specifically authorized or directed to assist the truck drivers in loading the shavings. Occasionally, however, some of defendant's employees voluntarily assisted the truck drivers in closing the bin doors. Defendant was solely responsible for the maintenance and repair of the bins.

At the time of the accident, plaintiff was a truck driver for Timber By-Products and was collecting the shavings from one of the bins at defendant's plant. Plaintiff was injured when the door closing mechanism malfunctioned while plaintiff and one of defendant's employees were attempting to close the bin door.

At the time this case was before the trial court, ORS 656.154 provided as follows:

"(1) If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman, or if death results from the injury, his widow, children or other dependents, as the case may be, may elect to seek a remedy against such third person. *However, no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the employer of the injured workman and was an employer subject to ORS 656.001 to 656.794.*

"(2) *As used in this section, 'premises' means the place where the employer, or his workman causing the injury, and the employer of the injured workman, are engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation.*

"(3) *No person engaged in pickup or delivery of any goods, wares or merchandise to or from the premises of any employer other than his own shall be deemed to have joint supervision or control over the premises of a third party employer.*" (Emphasis added.)

The trial court concluded that, under this court's interpretation of the statute, the plaintiff and defendant "were engaged in the performance of component parts of an undertaking on the defendant's premises, and under their joint supervision and control." The court also determined that plaintiff did not come under the "pickup or delivery" exception contained in subsection (3) of the statute.

However, after the trial court's decision and while this case was pending on appeal, the legislature amended ORS 656.154 so as to repeal the restrictions on third party actions in joint supervision and control cases. Thus, Chapter 152, Oregon Laws 1975, which became effective July 1, 1975, deleted all italicized language in the statute above. Plaintiff now urges us to apply that amendment retroactively so as to remove any question of joint supervision and control from this case.

█ Essentially, determining whether a particular statute was meant to apply prospectively or retrospectively is a matter of ascertaining the intent of the legislature. In the absence of an explicit indication of that intent, it is our duty to determine the legislature's probable intent. Although it is sometimes said

that remedial[1] and procedural statutes are normally applied retroactively, *see Lane v. Brotherhood of L.E. & F.*, 157 Or 667, 694, 73 P2d 1396 (1937); *Spicer v. Benefit Ass'n. of Ry. Emp.*, 142 Or 574, 592-93, 21 P2d 187, 90 ALR 517 (1933); 82 CJS 996-1000, Statutes §§ 421-422 (1953), that rule is merely a rule of construction. Like other rules of construction, it is not conclusive but only a guide to the proper interpretation of the statute. *See Joseph v. Lowery*, 261 Or 545, 552, 495 P2d 273 (1972).

■ In repealing the joint supervision and control exception to third party remedies, the legislature made a substantial change in Oregon's Workmen's Compensation Law. We believe that, had the legislature thought it prudent to have the amendment applied retroactively, it would have made its intention known.[2] In the absence of such an expression, we would be reluctant to apply retroactively an amendment making such a substantial change in the existing law. Correspondingly, we conclude that this case is governed by ORS 656.154 as that law existed both at the time of the injury and at the time of the trial of this case.

Plaintiff's other contentions are, first, that the circuit court erred in finding that the plaintiff and defendant were "engaged in the performance of com-

---

[1] Remedial statutes are those, like this one, which pertain to or affect a remedy, as distinguished from those which affect or modify a substantive right or duty. *See* Black's Law Dictionary 1457 (Fourth ed 1968) ("A statute giving a party a mode of remedy for a wrong, where he had none, or a different one, before.") *See also* H. Hart & A. Sacks, *The Legal Process: Basic Problems in the Making and Application of Law* 152-155; 637-650 (Tent ed 1958).

[2] Significantly, the same legislature, in making another change in the Workmen's Compensation Law during the same session, found no difficulty in expressly manifesting its intent to make that statute retroactive. *See* Chapter 497, § 5, Oregon Laws 1975. Moreover, both amendments were proposed by the same senate committee and at the request of the same labor organization.

ponent parts of an undertaking on defendant's premises, and under their joint supervision and control," and, second, that the court erred in concluding that the pickup or delivery exception contained in subsection (3) of ORS 656.154 did not apply to the facts in this case.

■ The decision of the trial court must be affirmed if there is any factual evidence to support it. *Green v. Market Supply Co.,* 257 Or 451, 453, 479 P2d 736 (1971).

In order for a third party action to be barred by the statute, it must appear that defendant had joint supervision and control with plaintiff's employer over the premises where the injury occurred, and that defendant and plaintiff's employer were engaged in the furtherance of a common enterprise or in the accomplishment of the same or related purposes. *Deitz v. Savaria, Smith,* 260 Or 538, 491 P2d 620 (1971).

We believe that there was ample evidence to support the trial court's finding that defendant had joint supervision and control with plaintiff's employer over the premises and that both employers were engaged in the furtherance of a common enterprise.

■■ As we stated in *Deitz v. Savaria, Smith,* supra:
"* * * The term 'joint supervision and control' describes a situation in which each employer has control of his employees' activities and, thus, through them has some control of the conditions under which his employees and the employees of the other employer must work. * * *" 260 Or at 542-43.

Thus, if there is an operational commingling of workmen, there may be joint supervision and control even though only one of the covered employers may be said to be in actual control over the site where the work is performed and over the instrumentality that causes

the harm. *See Pruett v. Lininger et al,* 224 Or 614, 623, 356 P2d 547 (1960). *See also Bass v. Dunthorpe Motor Trans.,* 258 Or 409, 413-14, 484 P2d 319 (1971); *Thomas v. Foglio,* 225 Or 540, 546-47, 358 P2d 1066 (1961).

■ In this case each employer had some control over the activities at the loading scene through its employees. The defendant's employees constructed the storage bins, repaired and maintained them, filled them with shavings and, on occasion, helped operate the doors during the loading process. Timber By-Products employees were responsible for the actual loading and hauling of the shavings from the bins to the processing plant. Therefore, the defendant and plaintiff's employer exercised joint supervision and control over the premises where the injury occurred.

Similarly, it is clear that the parties were engaged in component parts of a common enterprise at the time of the accident—the loading and hauling of shavings from defendant's premises. *See Vetter v. Pacific Motor Truck. Co.,* 266 Or 196, 512 P2d 785 (1973). Defendant's employees filled the bins, notified Timber By-Products when a bin was full, and directed the truck drivers to the particular bin to be emptied. Moreover, at the time of the accident, one of defendant's employees was assisting the plaintiff in the loading operation. As the trial court stated:

> "* * * The fact that the employees of the defendant were never specifically instructed to assist the plaintiff or other * * * drivers is of little consequence. They in fact had on prior occasions and were on this occasion assisting in the loading operation. The workmen were, at the time of the injury, engaged in the 'furtherance of a common enterprise and the accomplishment of the same or related purpose and operation', and therefore their activities come within the ambit of the 'circle of the activity of the enterprise'."

■ Finally, we also find substantial support in the evidence for the trial court's conclusion that plaintiff's case does not fall within the pickup or delivery exception contained in subsection (3) of ORS 656.154.

This court has previously discussed the pickup or delivery exception in *Gorham v. Swanson,* 253 Or 133, 453 P2d 670 (1969), and in *Green v. Market Supply Co.,* supra, and it is not necessary to repeat that discussion here. Plaintiff argues that this case is similar to the *Green* case in which we upheld a trial court's finding that, on the facts of that case, the pickup or delivery exception was applicable. *Green* involved a supermarket employee who was injured while helping the defendant's employees move a 400-lb. grinder from a truck to a loading dock. In that case, we stated that when considering the applicability of the pickup or delivery exception "we had in mind a continuum, running from the simple delivery of a parcel on one end to a complex operation requiring the 'massing of men and machinery' on the other." 257 Or at 455. In determining that *Green* involved a pickup or delivery situation as those words are commonly used, we noted that one significant factor in our decision was that "it was not necessary to use any machinery to make the delivery." *Id.* at 456.

In contrast to the situation in *Green,* this case clearly involved the use of industrial machinery in completing the loading process. Thus, on that basis alone, the cases are distinguishable. However, in our view, the most important distinguishing feature in this case is the fact that three to four trips a day were normally necessary to empty the shavings bins at defendant's plant. Unlike *Green,* this was not an isolated transaction between two otherwise unconnected employers, but rather a continuing course of conduct involving the cooperative efforts of both employers in the furtherance of a common objective. Cor-

respondingly, we agree with the trial court's conclusion that this case does not involve a mere pickup or delivery as those words are commonly understood.

Affirmed.

TONGUE, J., specially concurring.

I concur in the result of the majority opinion, but solely for the reason that the basic issue of "joint supervision and control," as again presented for decision in this case, has been previously decided adversely to the plaintiff by the majority of this court in *Green v. Shell Oil Co.,* 271 Or 362, 532 P2d 224, 227 (1975); *Miller v. River Bend Sand & Gravel,* 267 Or 331, 334, 516 P2d 1300 (1973); *Vetter v. Pacific Motor Truck Co.,* 266 Or 196, 202, 512 P2d 785 (1973); *Tidyman v. Industrial Air Products Co.,* 266 Or 170, 175, 512 P2d 792 (1973); *Counts v. Wakefield,* 261 Or 11, 14, 492 P2d 278 (1971); *Bass v. Dunthorpe Motor Trans.,* 258 Or 409, 415, 484 P2d 319 (1971); and also in other previous cases. In the above-named cases I also specially concurred in the result for the same reason.

Now that the legislature has repealed the statute relating to "joint supervision and control" it would appear that this may be the last of such cases. I agree, however, that the 1975 statute, Oregon Laws 1975, ch 152, is not retroactive in its application.