# MISNER, *Respondent,*
## *v.*
# HERCULES, INC., *Appellant.*
### 552 P2d 542

*Peter C. Richter,* of Miller, Anderson, Nash, Yerke

& Wiener, Portland, argued the cause and filed briefs for appellant.

*Frederic P. Roehr, III,* of Vergeer, Samuels, Roehr & Sweek, Portland, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and McAllister, Holman and Howell, Justices.

HOWELL, J.

**HOWELL, J.**

Plaintiff filed this action to recover damages for personal injuries incurred when he slipped and fell while unloading formaldehyde from his tanker truck into a tank on defendant's premises. Defendant filed a supplemental answer alleging that defendant and plaintiff's employer had joint supervision of the premises and that plaintiff's civil action was barred by the provisions of ORS 656.154. The trial court heard the issues raised by the supplemental answer and found that at the time of the accident plaintiff was engaged in the delivery of goods and came within the pickup and delivery exception to the joint supervision and control statute, ORS 656.154.[1] The action then proceeded to trial on plaintiff's complaint which alleged causes of action both for common law negligence and for violation of the Employers' Liability Act, ORS 654.305. The jury found against plaintiff on the negligence count and in favor of plaintiff on the count alleging violation of the Employers' Liability Act. Defendant appeals, contending, first, that the civil action was barred by the Workmen's Compensation Act and, second, that the trial court erred in denying defendant's motion for a directed verdict on the Employers' Liability Act cause of action.

Plaintiff was employed as driver of a tank truck and trailer for Inland Transportation Company. The accident occurred on October 23, 1972, when he was delivering a load of formaldehyde from Kent, Washington, to defendant's plant in Portland. Plaintiff arrived in Portland at 5:30 p.m., somewhat after the usual delivery hours. It was his first trip to defendant's plant. He was directed to the proper location by one of defendant's employees who also told him how to hook up his hose. After parking his truck, plaintiff

---

[1] ORS 656.154 has been amended by Chapter 152, Oregon Laws 1975, to delete the joint supervision and control and the pickup and delivery portions of the former statute. However, in *Perkins v. Willamette Industries,* 273 Or 566, 542 P2d 473 (1975), we determined that the amendment applied only to cases arising after its effective date.

connected the hose on his truck to another hose which was connected to defendant's tank through a series of pipes, valves and a pump. Defendant's employee opened a valve in the line leading to defendant's tank so the tank could be filled, and plaintiff began pumping from his truck through defendant's pump and into defendant's tank.

There was an initial problem with leakage occurring at the coupling joining plaintiff's and defendant's hoses, but after plaintiff replaced the gaskets at the joint the leakage ceased. After about 15 minutes, however, plaintiff noticed that the flow gauge was no longer moving. At the same time, the engine on plaintiff's pump began to labor, and plaintiff noticed that defendant's pump had stopped. Plaintiff also noticed that the hose coupling had begun to leak again. After checking his truck for problems, plaintiff called defendant's employee and told him that defendant's pump had stopped.

Although defendant's employee was unsuccessful in his attempts to restart defendant's pump, the pumping operation was continued. Progress was slow, however, and the leakage persisted. Finally, after an additional period of time, plaintiff suggested bypassing defendant's pump and pumping directly into defendant's tank. This was accomplished with the assistance of defendant's employee, and the pumping problems cleared up immediately. After the completion of the transfer of the formaldehyde, however, plaintiff slipped and fell in the pool of formaldehyde which had leaked onto the ground.

■ We conclude, as the trial court did, that plaintiff was engaged in the delivery of goods and that this case is controlled by our decision in *Green v. Market Supply Co.,* 257 Or 451, 479 P2d 736 (1971). In that case, we determined that the pickup and delivery exception involved "a continuum, running from the simple delivery of a parcel on one end to a complex operation requiring the 'massing of men and machinery' on the

other." 257 Or at 455. We do not believe that the delivery in this case approaches the sort of massing of men and machinery mentioned in *Green,* and we find that the facts in this case bring it closer to the simple delivery end of the continuum. The question is one of degree. Although the facts in this case are somewhat similar to those in *Perkins v. Willamette Industries,* 75 Adv Sh 3895, 273 Or 566, 542 P2d 473 (1975), in our view, *Perkins* involved a greater massing of men and machinery than was present in this case. Moreover, unlike *Perkins,* here there was no "continuing course of conduct involving the cooperative efforts of both employers in the furtherance of a common objective." 75 Adv Sh at 3901.

Defendant also contends that the evidence was insufficient to establish a jury question of liability under the Employers' Liability Act. Generally, the Employers' Liability Act requires all owners in situations involving risk or danger to use every care, device or precaution practicable to be used for the protection of employees or the public.[2] The plaintiff's complaint alleged:

> "Defendant failed to use every device, care and precaution for the plaintiff's safety in that the defendant could have provided a pump which functioned properly or repaired the existing pump; and defendant could have provided sufficient personnel to monitor or observe the operation of its equipment; and defendant could have inspected the equipment or suspended the operation on being advised of a malfunction; and defendant could have bypassed the defective pump allowing the pump on the delivery truck to complete the delivery without leakage of the formaldehyde."

In the instant case, there was evidence that formal-

---

[2] ORS 654.305 states: "Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employes or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

dehyde can cause burns and that it is dangerous when inhaled in any quantity. There was also evidence that defendant had only one employee at the scene. When the pump on defendant's tank stopped and formaldehyde began leaking from the hose coupling, plaintiff contacted defendant's employee and told him defendant's pump was not working. The employee did not know what to do, although apparently the pump could have been restarted from inside defendant's plant. When defendant's pump was bypassed, the leaking stopped and the unloading process was successfully completed. In the meantime, about 10 gallons of formaldehyde had collected on the ground.

Under these circumstances, we believe that it was a question for the jury as to whether defendant's failure to bypass the pump or to provide personnel who knew what to do when the pump stopped constituted a failure to use every care and precaution necessary under the act.

Affirmed.