Argued November 5, affirmed November 18, 1976

## HAMILTON, *Respondent,*
### *v.*
## IBACH, *Appellant.*

556 P2d 94

*John C. Anicker, Jr.,* Oregon City, argued the cause and filed a brief for appellant.

*Charles Paulson,* Portland, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Tongue, Bryson and Lent, Justices.

LENT, J. (Pro Tempore)

**LENT, J.** (Pro Tempore)

This is an action for damages for personal injuries allegedly caused on August 3, 1972, by negligence of the defendant's employee. Defendant appeals from judgment for plaintiff upon a jury verdict.

Prior to the jury trial on the merits there was a trial before the court upon defendant's supplemental answer filed pursuant to ORS 656.595 raising the "joint premises" defense available under then ORS 656.154:

> "(1) If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman, or if death results from the injury, his widow, children or other dependents, as the case may be, may elect to seek a remedy against such third person. However, no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the employer of the injured workman and was an employer subject to ORS 656.001 to 656.794.
>
> "(2) As used in this section, 'premises' means the place where the employer, or his workman causing the injury, and the employer of the injured workman, are engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation."

This defense was abrogated by amendments to that statute contained in Oregon Laws 1975, ch 152, effective July 1, 1975, but the amendments do not apply retroactively. *Perkins v. Willamette Industries,* 273 Or 566, 542 P2d 473 (1975).

The court found against the defendant and defendant assigns this as error.

Many of the facts are undisputed. The U.S. Forest Service sold the timber on a certain parcel of real property to a company which contracted with defendant to do the logging and to deliver the logs to the buyer's mill. Defendant subcontracted to H & H

[ 731 ]

Cutting Contractor the falling and bucking. Plaintiff was employed by H & H. Defendant and his direct employees did the skidding and loading of the logs which were hauled to the mill by independent log truck operators. Both defendant and H & H were employers subject to the Workmen's Compensation Law and insured by the State Accident Insurance Fund.

Defendant designated the areas where H & H was to work and required that H & H was to keep sufficient trees down to keep ahead of the skidders, who moved the fallen and bucked logs to the loader. Defendant testified that he required of H & H that the fallers and buckers "be far enough ahead of us so we weren't working close to him," and that "[t]he fallers and buckers were supposed to have been far enough ahead so they weren't anywhere near the skidders."

The injury occurred when one of defendant's skidder operators backed into a snag, a portion of which broke off and hit plaintiff. The evidence is somewhat conflicting as to exactly what the skidder operator was doing when the injury occurred, but in light of the court's general finding for plaintiff, we must accept that evidence as being true which is most favorable to plaintiff. *See, for example, Williams v. Pilgrim Turkey Packers,* 264 Or 36, 38, 503 P2d 710 (1972). The following appears from plaintiff's testimony:

"Q   Can you tell us how you came to get hurt and if it involved the use of a skidder, what the skidder was doing?

"A   Yes. There was one faller and two buckers on the job at the time. The faller had dropped four or five trees. I don't remember how many. And we proceeded to go out and limb them and buck them. I finished my tree first and came back in. And as I turned to come back in I saw a skidder operator sitting over there, which is highly unusual, because I have never seen a skidder operator or any kind of equipment sitting in an area where there was falling being done because it's highly dangerous.

"So, I walked over to see if this was anything

important. The faller was geting (sic) undercuttings on other trees and getting ready to drop some more trees. He said he just came down to see what was going on. I turned and left him. The other bucker had come in and the faller started dropping his trees. And I turned to walk toward the faller where he was at. And as I did, the man on the skidder backed up and backed into a snag and busted the top out of it and the top hit me in the back. He readily admitted it was his fault."

■■ We conclude, as did the trial judge, that there did not exist in this situation that "operational commingling" of employees necessary to establish the defense raised by the supplemental answer. As we so recently held in *Sanders v. City Center Lbr. Co.,* 267 Or 569, 518 P2d 1032 (1974), the defendant must establish "that the employees of both employers be engaged in what amounts to cooperative conduct in the furtherance of a common enterprise" in order for the "operational commingling" necessary to the defense to be found. 267 Or at 578. The actions of defendant's skidder operator in just coming "down to see what was going on" in an area where he was not supposed to work until H & H employees had left the area does not meet the statutory test.

Affirmed.