Argued and submitted May 15, affirmed November 16, 1981

## SENGER,
*Appellant,*

*v.*

## RISBERG'S TRUCK LINE et al,
*Respondents.*

(No. 77-1-300, CA 19088)

636 P2d 426

Steven E. Benson, Portland, argued the cause and filed the brief for appellant.

Glen S. Shearer, Portland, argued the cause for respondent. With him on the brief was Schouboe, Marvin & Furniss, P.C., Portland.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Plaintiff appeals from the trial court's judgment that plaintiff's personal injury negligence action is barred by ORS 656.154,[1] governing joint employers' tort immunity.

Risberg's Truck Line (Risberg's) is a common carrier; it was formed in 1935 for the purpose of transporting merchandise for Fred Meyer, Inc. It presently operates as an independent company, however, and has contracts with other enterprises as well. The Fred Meyer account involves transporting merchandise from warehouses to the retail stores. By 1975, Risberg's had 60 drivers and 150 pieces of equipment assigned to handle that account alone. Plaintiff is a dock employee for Fred Meyer at one such retail store, and defendant Jordan is a Risberg's driver assigned exclusively to the Fred Meyer account. Jordan made deliveries to plaintiff's particular department every Tuesday and Wednesday.

The standard delivery routine for Risberg's drivers assigned to Fred Meyer was as follows: The driver would arrive at a Fred Meyer warehouse in the morning, be given the day's delivery instructions and be told which truck he was to use. He would then locate the trailer at the appropriate loading dock and assist Fred Meyer employees in loading the truck, although the loading responsibility was primarily Fred Meyer's. When the driver arrived at the receiving store, it was primarily his responsibility to maneuver the truck to the dock and to unload it. The dock employees were responsible for opening the warehouse door, unsealing the truck door, counting the merchandise as it was unloaded and resealing the truck door afterwards. In addition, they were instructed by Fred Meyer to assist the driver in unloading and would signal the driver to help him move the truck into position when necessary. Employees of both employers were instructed by their employers to cooperate with each other.

On the day plaintiff was injured, Jordan had to stop his truck a considerable distance from the dock to

---

[1] ORS 656.154 has been amended to abolish the immunity which is at issue here. Or Laws 1975, ch 152, § 1. The accident in this case happened prior to the amendment.

allow plaintiff to unseal and open the truck doors, because there was a long wall beside the dock which prevented the doors from being opened any closer to the warehouse door. The doors were folded back against the side of the truck, and Jordan then backed up along the wall to the dock. After the truck was unloaded, Jordan attempted to pull the truck away from the dock so that the doors could be closed and resealed. One of the doors caught on a projection on the building, and plaintiff was injured as he attempted to aid Jordan by holding the door back against the side of the truck so that it would clear the projection.

Plaintiff brought this action against defendants for his injuries. Defendants' supplemental answer alleged that the action was barred by ORS 656.154. The case was tried to the court on the supplemental answer, and judgment was entered for defendants. Plaintiff appeals.

ORS 656.154 provided:

"(1) If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman * * * may elect to seek a remedy against such third person. However, no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the employer of the injured workman and was an employer subject to ORS 656.001 to 656.794.

"(2) * * * 'premises' means the place where the employer, or his workman causing the injury, and the employer of the injured workman are engaged in this furtherance of a common enterprise or the accomplishment of the same or related purposes in operation."

This statute provided immunity for defendants if two requirements are satisfied: (1) joint supervision and control; and (2) a common enterprise. In his first assignment of error plaintiff contends that they are not satisfied here.

■ ■  The term "joint supervision and control" describes a situation where each employer controls its employees' activities and has some control over the conditions under which both its employees and the employees of the other employer work. *Perkins v. Willamette Industries,* 273 Or 566, 572, 542 P2d 473 (1975); *Deitz v. Savaria, Smith,* 260 Or 538, 491 P2d 620 (1971). Here each employer had

control of its workmen and had directed them to work together cooperatively; the employees had no direct control over each other. The first requirement is met.

To meet the common enterprise requirement, "it is not necessary that the two employers be engaged in a common enterprise as their ultimate business objective." *Deitz v. Savaria, Smith, supra,* 260 Or at 545. The important thing is a common aim. Whether employers have a "common aim" is to a large extent a question of perspective; that is, at some level the purposes of independent businesses inevitably diverge, and the court must determine "how large the circle of 'common enterprise' or 'related purpose' is [to be] drawn." *Deitz v. Savaria, Smith, supra,* 260 Or at 545-546. For example, plaintiff contends that because Fred Meyer is "engaged in selling goods to the public" and defendants are "engaged in the transportation of goods and merchandise from the warehouse to retail stores," they were not engaged in a common enterprise. The statute contemplated, however, examining the employers' goals on a much smaller scale, and we think it is clear that Fred Meyer and Risberg's had the common aim of unloading the truck and moving it out as expeditiously as possible.

Citing *Kosmecki v. Portland Stevedoring Co.,* 190 Or 85, 223 P2d 1035 (1950), plaintiff argues that there was no common aim, because holding back the truck door was outside the normal range of plaintiff's employment and a mere favor to the driver. In the first place, plaintiff's assistance was of considerable benefit to Fred Meyer, as well as to defendants; other trucks were waiting to unload, and the dock was tied up while defendant's truck was hung up on the wall. In any event, it is immaterial that plaintiff was assisting in an activity in which he was not specifically instructed to engage. It is enough that he had assisted the driver in maneuvering his truck on prior occasions and was doing so at the time of the injury. *Perkins v. Willamette Industries, supra.* Plaintiff's reliance on *Kosmecki,* where the plaintiff's gratuitous service to the defendant was found not to be in furtherance of a common enterprise, is misplaced, for the case was not decided on that ground.

Closest to being in point is *Green v. Shell Oil Co.,* 271 Or 362, 532 P2d 224 (1975), where the plaintiff was

repairing the defendant's truck, which had broken down on the highway. The plaintiff was injured by the defendant's employee's alleged negligence when he started the truck motor in order that the repair work could continue. The court stated:

> "Both employers were interested in getting the wheel repaired. It was necessary to operate the truck to repair the wheel. Hays [defendant] was responsible for the operation of the truck. * * * It is irrelevant that plaintiff's helper could also operate trucks. * * * As would be expected, the operator of the truck and the repairman were cooperating in getting the job done." 271 Or at 366.

Here, both employers wanted to get the truck moving. It was necessary for someone to hold the door, and plaintiff was the logical person to do it.

Even if Risberg's is immune under sections (1) and (2) of ORS 656.154, plaintiff contends that this case comes under section (3), the pickup or delivery exception, which provided that:

> "No person engaged in pickup or delivery of any goods, wares or merchandise to or from the premises of any employer other than his own shall be deemed to have joint supervision or control over the premises of a third party employer."

This provision has never been applied literally, but rather has been interpreted in light of its purposes and limited to "ordinary pickup and delivery situations, as those words are commonly understood." *Boling v. Nork,* 232 Or 461, 465-466, 375 P2d 548 (1962). In *Green v. Market Supply Co.,* 257 Or 451, 479 P2d 736 (1971), the court elaborated on *Boling:*

> "[I]n deciding *Boling v. Nork* we had in mind a continuum, running from the simple delivery of a parcel on one end to a complex operation requiring the 'massing of men and machinery' on the other. We think this case * * * is a pickup and delivery situation as those words are commonly used. We are persuaded to that conclusion by the findings of the trial court that (1) defendant's employees were exclusively responsible for making the delivery; (2) they were capable of making it themselves; (3) it was not necessary for any employee of Fred Meyer, Inc., to help with the delivery; and (4) it was not necessary to use any machinery to make the delivery." 257 Or at 455-456.

*Green* involved the one-time return to the plaintiff's employer of a meat grinder which the defendant had repaired for him. The plaintiff was injured when he helped the defendant's employees with the unloading.

At the other end of the spectrum is *Perkins v. Willamette Industries, supra.* There the plaintiff-truck driver made three or four trips each day to the defendant's lumber mill to haul away wood shavings. The court distinguished *Green,* stating:

> "Unlike *Green,* this was not an isolated transaction between two otherwise unconnected employers, but rather a continuing course of conduct involving the cooperative efforts of both employers in the furtherance of a common objective. * * * " 273 Or at 574.

■ Application of these two decisions to the case at hand satisfies us that this was not an "ordinary pickup and delivery." First, the criteria set out in *Green,* as a whole, cut against plaintiff. It was not defendant's exclusive responsibility to *unload* the truck, because plaintiff was obligated to help him. In any case, *making a delivery* requires opening the door of the receiving dock, unsealing and then resealing the truck doors, for which plaintiff had exclusive responsibility. The injury occurred, after all, when Jordan was pulling away from the dock so it would be possible to close and reseal the doors. Most important of all is the fact that this long-standing arrangement involved the kind of recurring conduct as in *Perkins,* and an even greater level of cooperation.

In sum, this is precisely the kind of situation in which ORS 656.154 provided tort immunity. The judgment of the trial court is affirmed.